(No. 27034.—Respondent disbarred.)

IN RE LEOPOLD B. MELNICK, Attorney, Respondent.

*Opinion filed May 20, 1943.*

Charles Leviton, *amicus curiae.*

John B. King, for respondent.

Mr. Justice Thompson delivered the opinion of the court:

The committee on grievances of the Chicago Bar Association, as commissioners under Rule 59, has filed a report charging respondent with unprofessional, unethical, and dishonorable conduct, denoting a lack of good moral character and tending to bring the profession of law and the courts of justice into disrepute and contempt. They recommend he be disbarred and his name stricken from the roll of attorneys. To this report the respondent has filed exceptions.

The report of the commissioners is based upon six separate complaints filed with the bar association by six different parties, all clients of respondent. Each complaint charges respondent with converting funds given him to pay to the Department of Finance on account of the retailers' occupation tax. The first complaint was filed April 6, 1939, and the last on October 29, 1941. After the filing of the complaints respondent, through his attorney, who was also a relative, made settlement with the claimants, paying them various sums and taking from each a written release of all claims. Respondent filed one answer to all complaints, admitting in each case his employment and receipt of the moneys mentioned, and claiming he had rendered legal service and had made settlement in full with the parties to their entire satisfaction. He further set up in his answer that, due to illness, it became necessary for him to procure the assistance of Maurice Rose, a competent public accountant; that he turned over to Rose, from time to time, various sums of money to be applied toward the claims of the Department of Finance against the complainants; that Rose died, leaving no estate

and no records or material available to determine what, if any, payments had been made by him, as requested by respondent, on behalf of such claims; and that respondent made the adjustments with the claimants because, although he had turned the matters over to Rose for final disposition, he feels and has been advised that he has a personal responsibility to his clients.

The record in this proceeding is quite lengthy. It has received our careful attention, but it would serve no useful purpose to set out in detail the various accusations against respondent contained in the complaints or the evidence concerning the same. We will mention only four instances of his receipt of moneys in trust, specifically designated to be paid to the Department of. Finance. On June 25, 1937, he received from his client, William Landwer, the sum of $750, for which he issued to him the following receipt:

"This is to acknowledge receipt of $200.00 in cash, and $550.00 check making a total of $750. for the following purposes: $250.00 as retainer and fee for the purpose of investigating and appearing for you at Waukegan Court House, on Monday in connection with sales tax investigation, and $500.00 for the purpose of paying all or any part thereof if, as and when I reach an agreement with the finance department of the State of Illinois."

On August 10, 1937, respondent received from Conzelman Motor Company the sum of $1800 and gave the company the following receipt:

"Received of Conzelman Motor Co. Waukegan, Illinois; Eighteen Hundred & no/100 Dollars for the purpose of paying Sales Tax and attorneys fees as and when determined by Ill. Finance Department."

May 2, 1938, respondent received from Henry Schad the sum of $500, for which he issued to Schad the following receipt:

"Received of Schad Brothers the sum of Five Hundred Dollars ($500.00) to be retained by the undersigned in connection with the

defense of the assessment levied against the said Schad Brothers by the Department of Finance, Retailers' Occupation Tax Division, #17539 and #17540.

It is understood that if a hearing is not granted by the Department, that the said amount be returned to the said Schad Brothers."

And, on January 16, 1939, respondent received from Gunnar Swenson the sum of $1000, for which he issued to him the following receipt:

"Received of Gunnar Swenson the sum of One Thousand Dollars $(1000.00) as deposit, for the purpose of negotiating with the Department of Finance, Retailers' Occupation Tax Division, State of Illinois, in connection with its alleged claim against him. It is understood that the Department's claim against him does not exceed the sum as set forth above; that the foregoing sum or any part thereof is to be paid if, as and when the figures of its claim does not exceed the foregoing sum, otherwise the deposit is to be returned to the said Mr. Gunnar Swenson. The foregoing sum the undersigned received in two (2) checks: one in the sum of Three Hundred Dollars ($300.00) dated January 7, 1939, and the second check in the sum of Seven Hundred Dollars ($700.00) dated January 16, 1939, both drawn on the North Shore National Bank, Chicago, Illinois."

Respondent admits that he received these moneys for the specific purposes set out in the four written receipts. The evidence, including respondent's own testimony, shows without the slightest contradiction that none of this money was at any time paid to the Department of Finance, that respondent retained the same until after charges had been made against him and disbarment seemed imminent, when a part, only, was returned to each client.

Respondent, to justify the retention of these funds, answered generally that he had entrusted these matters to the accountant Rose and had turned over to him the moneys to be transmitted to the Department. At the hearing held on April 15, 1942, respondent testified that there were no receipts or canceled checks to show the payment of money to Rose, that he always paid him in cash, that he had no records of the various payments, that he did

not know whether Rose kept any records of the various payments, that Rose died in January, 1941, and he had made no inquiry of his widow in regard to any records. Considering this testimony of respondent in its most favorable light, it is incredible, to say the least, that in a matter of such grave importance, upon the result of which depended the existence or destruction of his professional career, he should have been so unconcerned as to make no inquiry either of Rose in his lifetime or of his widow subsequent to his death, although complaints in these matters had been pending prior to Rose's death and more than two years before the hearing in these cases. There is no evidence that the accountant Rose kept no records of these payments, if any such were made, or that such records, if kept, are not available to the respondent. This was the defense asserted by respondent in his answer. In somewhat analogous situations this court has twice said in disbarment cases that the burden is upon the attorney to prove or disprove. (*People ex rel. Chicago Bar Ass'n* v. *Templeman,* 363 Ill. 152; *People ex rel. Chicago Bar Ass'n* v. *Pace,* 354 Ill. 111.) Here, respondent, by his own admission, has made no attempt to furnish the proof to sustain the matters set up in his answer as an affirmative defense. This defense, with respondent's testimony that he paid over to a man now dead large sums, always in cash and always without taking any receipt or keeping any record, that he did not know and had not inquired, either of this man or his widow, whether there were any such records, is so unreasonable, in view of the fact that for more than two years prior to the hearing respondent, through his attorney and relatives, had been actively negotiating with claimants for a release of liability, that it merits neither credence nor attention.

Respondent himself must have realized this, inasmuch as he advanced in his testimony at the hearing another and different excuse for his retention of these moneys. He testified that after he had received the moneys specifically

indicated to be turned over to the Department of Finance, there was in each case a new fixed agreement as to his fees. The record contains no proof of any such subsequent agreements, except the uncorroborated statement of respondent, and it is significant that in each case the new agreement for fees, according to his testimony, is fixed large enough to offset all moneys received by him to pay on account of taxes. The measure of good faith which an attorney is required to exercise in all his dealings with his client is of a much higher standard than is required in business transactions where the parties deal with each other at arm's length. The relation between them is a confidential one and when an attorney gets the money of his client into his hands, he will not be allowed, in a disbarment proceeding, to justify its retention by a claim for fees to which he is not entitled. *People ex rel. Chicago Bar Ass'n* v. *Loeff*, 292 Ill. 55.

Respondent contends that the charges of each complaint are not supported by the required degree of proof. The character of evidence necessary to justify the disbarment of an attorney has been frequently defined by this court. The misconduct complained of must be shown by clear and convincing testimony to have been fraudulent and the result of dishonest and improper motives. (*In re Smith*, 365 Ill. 11; *People ex rel. Chicago Bar Ass'n* v. *Lotterman*, 353 Ill. 399.) The proof must not only show acts of misconduct, but must clearly show that they were intended to defraud or deceive. (*People ex rel. Chicago Bar Ass'n* v. *A'Brunswick*, 315 Ill. 442; *In re Lasecki*, 358 Ill. 69.) Charges of misconduct, to form the basis for disbarment, must be proved by clear and convincing evidence. (*People ex rel. Cline* v. *Kerker*, 315 Ill. 572; *People ex rel. Chicago Bar Ass'n* v. *Gorindar*, 350 Ill. 256.) The court will not disbar where there is substantial doubt as to guilt. (*In re Goodman*, 377 Ill. 178.) The accepted rule is that in any disbarment proceeding, whether the misconduct charged amounts to a crime or merely to professional mis-

conduct, the charge must be proved only by clear and convincing testimony. (*In re Malmin*, 364 Ill. 164.) This court has never held in disbarment proceedings that respondent's misconduct is required to be proved beyond a reasonable doubt. *In re Malmin*, 364 Ill. 164.

Applying these rules to the record before us, we are fully convinced that respondent has been proved guilty of unprofessional and dishonorable conduct and of repeatedly appropriating to his own use moneys belonging to his clients. The wrongful conversion, by an attorney, of funds placed in his hands for a specific purpose is a flagrant violation of his duty sufficient to warrant his disbarment. (*In re Both*, 376 Ill. 177; *In re Casey*, 359 Ill. 496.) Restitution or settlement made after complaint has been filed will not absolve the respondent. (*In re Both*, 376 Ill. 177; *In re Casey*, 359 Ill. 496; *People ex rel. Chicago Bar Ass'n* v. *Hansen*, 352 Ill. 144.) We repeat what we said in the case of *People ex rel. Chicago Bar Ass'n* v. *Meyerovitz*, 278 Ill. 356, that "the legal profession affords unscrupulous attorneys exceptional opportunities to impose and prey upon those who entrust them with business, and it is essential that members of the profession, in their relation to the public and with clients, shall be strictly honest and worthy of trust and confidence." A certificate of admission to the bar is a representation made by this court that the possessor is worthy of the confidence of clients entrusting their interests to his care. The purpose of disbarment is not punishment of the attorney, but is for the protection of the public and to maintain the integrity of the profession and the dignity of the courts, of which the attorney is an officer.

The report and recommendation of the commissioners are approved as to respondent Melnick and he is disbarred from the practice of law and his name is ordered stricken from the roll of attorneys of this court.

*Respondent disbarred.*