(No. 41074.-

*In re* HAROLD BROVERMAN, Attorney, Respondent.

*Opinion filed May 29, 1968.—Rehearing denied Sept. 24, 1968.*

TERRY O. HELMICH, of Springfield, *amicus curiae.*

VAN METER, OXTOBY & FUNK, of Springfield, (ROBERT B. OXTOBY, of counsel,) for respondent.

Mr. JUSTICE WARD delivered the opinion of the court:

The Board of Governors of the Illinois State Bar Association, serving as Commissioners of this court under Rule 751, has recommended to this court that Harold Broverman, the respondent, who was admitted to the practice of law in this State in 1936, be disbarred.

An examination of the report of the Board of Governors and the balance of the record discloses that Margaret Harding retained the respondent in December, 1963, to represent her in what eventuated as a divorce and child custody action in Sangamon County and other litigation, including partition and injunction proceedings, in Jasper County. Consequently, the respondent received three checks made payable to Margaret Harding in the amounts of $6027.91, $18,756.03 and $813.65. All the checks were endorsed by the respondent: "Margaret E. Harding    Harold Broverman her attorney." The checks in the first two amounts were deposited on October 22, 1964, and February

3, 1965, respectively, in a bank in Palmer, Illinois, in the "Harold Broverman office account." However, so far as the first check was concerned, the account was credited with but $5027.91, as the respondent requested and received from the bank $1000 in currency. It appears that the third check was not deposited in any account but was cashed. The finding of the Board was that the respondent had at least implied authority to endorse and deposit the checks and it was found that the client was advised by the respondent of the receipt of the checks. Concurrently, the respondent was representing the executor of an estate in probate. He purchased for his own account the assets of such estate, which consisted of various negotiable securities. The securities were paid for by a money order which the respondent had purchased from the bank in Palmer. The money order Broverman received from the bank was paid for with a check drawn on his office account, the same account in which he had deposited the checks of Margaret Harding. The check drawn was dated March 29, 1965, and was in the amount of $30,832.35. The balance which remained in the respondent's office account was $52.16 and it is obvious that Margaret Harding's funds were used in the purchase of the securities. Margaret Harding was not advised by respondent that he had used her funds to purchase the securities nor did he inform her he had otherwise used any of such funds.

The Board found that on July 17, 1965, Mrs. Harding and members of her family met with Broverman to discuss her affairs and she and the respondent on such date executed a document which he had drawn and which was described as an "agreement." The document, insofar as it is significant here, recited that the respondent would have a power of attorney to invest or retain any funds recovered and would have three months after "final settlement of all obligations" to pay Mrs. Harding "75% of all net moneys

recovered, plus 4% interest." The document stated that the respondent would not be required to make any accounting until the divorce case of the client, which appeared to have been pending in the appellate court, was terminated. The instrument, referring to Mrs. Harding, also stated: "I ratify and confirm all transactions previously made by Harold Broverman." The document did not describe or refer to any transactions previously made by the respondent which Mrs. Harding was, according to the instrument, ratifying and confirming. The Board found that the client executed the instrument freely and without coercion.

Complaint was made to the Illinois State Bar Association on behalf of Mrs. Harding in September, 1965. The respondent accounted in full to his client on October 27, 1965. The Hearing Division of the Illinois State Bar recommended to the Board that the respondent be suspended from the practice of law for one year and until further order of this court. It recommended further that there be imposed as an express condition of any permission granted the respondent thereafter to resume practice and that he be required to maintain the funds of clients in a segregated trust fund and not use such funds for his own use.

The Board in rejecting the recommendation of the Hearing Division and recommending disbarment stated it had considered not only the conduct of the respondent as described here but also the respondent's admission under examination by counsel for the Bar Association that there were "several" other cases in which he had used clients' funds for his own purposes. The Board stated, too, that it had considered prior disciplinary proceedings which had been undertaken against the respondent in which the Hearing Division had recommended his suspension from practice for 12 months. The Board in that proceeding did not adopt such recommendation but recommended that the respondent be censured. He was censured by this court in case No.

38245 entitled *In re Harold Broverman* on November 26, 1963. That proceeding involved the commingling and misuse of $15,063 in estate funds.

The complaint which was filed against the respondent was in 5 counts. Count 5 was dismissed and the allegations of count 4 were found not to have been sustained. The Board found that the charges in counts 1, 2 and 3 were sustained. These counts charged substantially that the respondent wrongfully misappropriated and converted to his own use the proceeds of three checks, totaling $25,597, which had been made payable to his client, Margaret Harding. In essence, these counts charge a violation of Canon 11 of the Canons of Professional Ethics of the Illinois State Bar Association. The canon declares: "The lawyer should refrain from any action whereby he abuses or takes advantage of the confidence reposed in him by his client. Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

Canons of ethics adopted by bar associations are considered appropriate criteria to judge professional conduct and the failure to observe them may subject an attorney to disciplinary action. *In re Krasner,* 32 Ill.2d 121.

We believe the findings by the Board were proper and supported by the record. Such findings "are entitled to virtually the same weight as the findings of any initial trier of facts in our judicial system." *In re Krasner,* 32 Ill.2d 121.

The protest of the respondent that the findings are erroneous because the complaint charged misappropriation and conversion rather than commingling, which was the finding of the Board, is without merit. We believe that "commingling" is in the sense of legal ethics comprehended in "misappropriated." There is no plausible reason to be-

lieve that the respondent in any way was misled or prejudiced by any verbal variance. "A disciplinary proceeding is not a lawsuit with formalities of pleading * * *." *In re Becker,* 16 Ill.2d 488, 499.

We do not accept the respondent's arguments that it was improper for the Board in forming its recommendation to consider the testimony of the respondent that in "several" other instances he had used moneys of clients. The situation in *In re Thompson,* 30 Ill.2d 560, resembled what occurred here and our holding there was that the association properly considered an attorney's testimony as to matters not contained in the complaint against him.

The action of the Board in considering the prior disciplinary action of this court against the respondent in forming its recommendation was proper. (*In re McCallum,* 391 Ill. 400.) The record shows that the parties stipulated at a pretrial conference that if the documents relating to such prior disciplinary action became relevant they could be admitted without further proof of their authenticity. We deem that the objection now of the respondent that such documents were not offered in evidence is excessively formal and without merit in view of the stipulation and considering the nature and purpose of disciplinary proceedings.

The "agreement" drafted by the respondent did not shelter him from the charge of misconduct through the misuse of his client's funds. The instrument was drawn by the respondent following his wrongful use of Mrs. Harding's money and it is clear to us that it was designed as an exculpatory device to be used when and if the respondent's breach of trust would be disclosed. The relationship between attorney and client is one requiring of the attorney complete good faith and fairness toward the one he serves. No honor attached to the respondent's conduct in this deceit.

We cannot say that the recommendation of the Board is inappropriate. The disbarment of a lawyer is a melan-

choly business but it is in certain instances necessary for the public good. The purpose of disbarment is to protect the public and to maintain the integrity of the profession. (*In re Melnick,* 383 Ill. 200.) In 1963, the respondent was censured by this court for misconduct similar to that which has been disclosed here. It would appear that the unhappy experience of censure did not cause the respondent to halt his unprofessional practices. In a case which involved a repetition of misconduct following censure we said: "Respondent has clearly demonstrated that the only way to prevent him from engaging in such practices is to strike his name from the roll of attorneys." (*In re McCallum,* 391 Ill. 400, 417.) Here, too, we deem that the only way we can protect the public interest and avoid embarrassment of the administration of justice is to strike the respondent's name from the role of attorneys. We adopt the recommendation of the Board and enter judgment of disbarment.

*Respondent disbarred.*