(No. 55034

*In re* DANIEL MERRICK SCHUYLER, Jr., Attorney, Respondent.

*Opinion filed April 16, 1982.*

8

MORAN and UNDERWOOD, JJ., dissenting.

Charles S. Morgan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Jacobs, Williams, and Montgomery, Ltd., of Chicago (Barry L. Kroll and C. Barry Montgomery, of counsel), for respondent.

CHIEF JUSTICE RYAN delivered the opinion of the court:

This attorney disciplinary proceeding stems from the transfer of nearly $10,000 in 1970 from Hilda Waalkes, a 77-year-old lady who was living in a retirement home in Evanston, to the respondent, Daniel Merrick Schuyler, Jr., an attorney. The transaction did not come to light until after the death of Hilda Waalkes, who died in 1976.

The money was transferred to the respondent by Hilda following the death of her sister, Flora Waalkes. The transfers were made by four checks totaling $9,937.82 from different sources as follows:

| Date: | Maker: | Amount: | Payee: | Source of Funds: |
|---|---|---|---|---|
| 5/27/70 | United of Omaha | 6,133.81 | Hilda Waalkes | Annuity Policy |
| 11/7/70 | Pullman Bank & Trust Co. | 19.67 | Hilda or Flora Waalkes | Certificate of Deposit |
| 11/9/70 | Pullman Bank & Trust Co. | 84.34 | Hilda or Flora Waalkes | Certificate of Deposit |
| 11/12/70 | Pullman Bank & Trust Co. | 3,700.00 | Hilda or Flora Waalkes | Certificate of Deposit |

A complaint was filed by the Administrator of the Attorney Registration and Disciplinary Commission charging the respondent with conduct which was unprofessional and unethical, which constituted undue influence, and which tended to bring the legal profession into disrepute. A panel of the Hearing Board found that the Administrator had proved by clear and convincing evidence that respondent had failed to rebut the presumption of undue influence in accepting gifts from Hilda Waalkes and had failed to advise her to seek independent advice. The panel recommended that respondent be suspended from the practice of law for six months.

The Review Board, without announcing its reasons, affirmed the findings and conclusions of the Hearing Board but modified the recommendation and ordered respondent to appear before the Review Board for the delivery of a reprimand pursuant to Commission Rule 10.4. We granted the Administrator's petition for leave to file exceptions to the order of the Review Board. 73 Ill. 2d R. 753(e).

Two issues are presented for review. The first is whether the evidence clearly and convincingly establishes that respondent failed to rebut the presumption of undue influence which arose when respondent accepted nearly $10,000 from Hilda Waalkes while he was her attorney. The second issue is whether respondent's conduct warrants the imposition of sanctions.

With regard to the first issue, although respondent

suggests that the limited nature of his duties, *i.e.,* filing income tax returns, falls short of an attorney-client relationship, this is clearly not true. The record reflects that, following Flora's death, respondent performed other legal services for Hilda besides preparing her income tax return. The limited nature of his duties with respect to Hilda Waalkes did not lessen respondent's professional responsibility as attorney with respect to her. Moreover, the existence of the attorney-client relationship results in a fiduciary relationship as a matter of law. *In re Czachorski* (1969), 41 Ill. 2d 459; *In re Broverman* (1968), 40 Ill. 2d 302, 307; *McFail v. Braden* (1960), 19 Ill. 2d 108; *Gaffney v. Harmon* (1950), 405 Ill. 273, 277.

It is a time-honored principle that all transactions occurring between attorney and client, while the relationship continues, must be subject to the closest scrutiny. (*Elmore v. Johnson* (1892), 143 Ill. 513, 525.) The measure of good faith which an attorney is required to exercise in all his dealings with his client is a much higher standard than is required when the parties deal with each other at arm's length. *Gaffney v. Harmon* (1950), 405 Ill. 273, 277; *In re Melnick* (1943), 383 Ill. 200, 205; see also 7 Am. Jur. 2d *Attorneys at Law* sec. 121 (1980).

Accordingly, where an attorney engages in a transaction with his client and is benefited thereby, the burden rests with the attorney to show that it was fair, equitable and just, and that it did not proceed from undue influence. *Turner v. Black* (1960), 19 Ill. 2d 296, 305; *McFail v. Braden* (1960), 19 Ill. 2d 108, 117; *Rose v. Frailey* (1957), 10 Ill. 2d 514; *Vrooman v. Hawbaker* (1944), 387 Ill. 428, 435; see also 7 Am. Jur. 2d *Attorneys at Law* sec. 123 (1980).

Although, as the Hearing Board concluded, "many questions remain unanswered because of the failure of Respondent to appear and testify at the hearing other than by deposition," certain essential facts are clear. Respond-

ent was Hilda Waalkes' attorney from 1965 or 1966 until 1973. Respondent also acted as attorney for Flora Waalkes, Hilda's sister, from 1965 or 1966 until her death in 1970. The transfers from Hilda to respondent occurred after Flora's death. However, the transfers came to light only after the death of Hilda Waalkes in 1976.

Shortly after Hilda Waalkes' death, Frances Dalenberg, her niece, questioned respondent concerning the proceeds of Flora Waalkes' annuity policy. Respondent said he would look into it. Later, in March 1976, Frances Dalenberg asked about the $6,000 which should have been received from the annuity policy. Respondent replied that it may have been put into a special account that his firm kept for client's funds.

Frances Dalenberg retained Sheila Bator, an attorney, in May 1976 to represent her in connection with the estate of her aunt. Bator wrote to respondent asking for all the materials in his possession connected with Hilda Waalkes' estate and for information concerning the missing money. It was not until mid-September that respondent, returning Bator's call, told her that he had just then remembered that Hilda Waalkes had given him the proceeds of an annuity policy in 1970. Respondent further stated to Bator that he had been very close to Hilda, closer than anyone except Frances Dalenberg, and that he remembered that Hilda had given him a gift but that he only then recalled that it was the proceeds of an annuity policy about which Bator had previously written. Respondent then indicated to Bator that he had a memorandum of gift and a gift tax return. After many attempts to obtain copies, Bator was finally furnished with them.

The Xerox copies of missing originals refer to the amount of $6,133.81, the amount of only one of the four checks. The memorandum of gift was prepared by respondent and dated July 13, 1970. The handwritten gift tax return was dated March 13, 1971. The Internal Reve-

nue Service had no record of having received the gift tax return. When Bator asked respondent why the gift tax return did not include the amount of the other three checks, respondent replied that it was not enough money to make it necessary.

The probate record in Hilda's estate shows that the circuit court authorized settlement of a claim against respondent and his former law firm in the amount of $15,000 based on "a cause of action *** arising out of various events which occurred on or about 1970 whereby the Estate of Hilda Waalkes was injured in property by reason of an alleged forgery or conversion of certain funds *** ."

In its report, the Hearing Board stated that it was making no finding as to respondent's "failure to be candid in accounting for the funds"; hence, the recommended six months' suspension is not based on respondent's apparent lack of forthrightness. Rather, the Hearing Board found that the respondent had not rebutted the presumption of undue influence in accepting the gifts and failed to advise Hilda Waalkes to seek independent counsel. This conduct the Hearing Board found to be unethical.

As pointed out earlier, a fiduciary relationship exists between attorney and client as a matter of law. Where the attorney benefits from a transaction with a client during the existence of the attorney-client relationship, the burden is on the attorney to show that the benefit was not the result of undue influence.

It is, of course, extremely difficult to overcome the presumption of undue influence when no third party is privy to the transactions. In his brief before this court, respondent has indicated that he now recognizes that the "wiser course" would have been to insist that Hilda Waalkes discuss the proposed gifts with a third party, "if only for his own protection." The "memorandum of gift" prepared by respondent was, unfortunately, not witnessed

and covered only part of the total amount of the gifts. Additionally, this court has in the past looked with disfavor on documents prepared by attorneys in which the attorney's questionable conduct is later ratified by the client. (*In re Broverman* (1968), 40 Ill. 2d 302, 307.) This is not to suggest that respondent's conduct in any way equaled the seriousness of the conduct in *Broverman*, but only to suggest that, at best, an unwitnessed "memorandum of gift," even covering the full amount, is a poor substitute for the advice, or at least presence, of a disinterested third party.

This situation can be contrasted to *In re Barrick* (1981), 87 Ill. 2d 233, in which the attorney who drafted a will included a lifetime annuity for himself of $12,000 per year, the amount he had been receiving as an annual retainer, at the request of his client. In *Barrick* a third party, the business manager of the client, was privy to the transaction, and the attorney advised the client that she should select another lawyer to draft her will if she insisted upon including a legacy for him. The client continued to insist both that the attorney draft her will and that he be included in it. Three persons who were strangers to the attorney witnessed the will, and the attorney explained to them that he and the business manager were beneficiaries under the will. We dismissed the charge in that case because the attorney had done all that he could to protect both himself and his client. He advised her that there were ethical considerations involved and that she should secure the assistance of another attorney. A third party was privy to the entire transaction, and there were additional witnesses who were aware that the attorney was named beneficiary. As such, the presumption of undue influence was overcome.

Although we have not before confronted facts exactly like these, similar questions have arisen in other jurisdictions. In *Cuthbert v. Heidsieck* (Mo. 1963), 364 S.W.2d

583, 588, the Supreme Court of Missouri set aside a purported gift of stock worth approximately $20,000 from an 80-year-old woman to her attorney on the ground that the record did not establish that the client had "independent and disinterested advice" regarding her transfer of stock and her reasonable obligations to the defendant or that she discussed her intentions before or after the transfer with third parties. The court concluded: "defendant's position would be much improved had [the client] secured and acted upon the advice of some competent disinterested person who was cognizant of all the circumstances connected with the transaction." *Cuthbert v. Heidsieck* (Mo. 1963), 364 S.W.2d 583, 588; see also *Flanagan v. DeLapp* (Mo. 1976), 533 S.W.2d 592; *McDonald v. Hewlett* (1951), 102 Cal. App. 2d 680, 228 P.2d 83; *Nicholson v. Shockey* (1951), 192 Va. 270, 64 S.E.2d 813; *Marron v. Bowen* (1944), 235 Iowa 108, 16 N.W.2d 14; *Armstrong v. Morrow* (1917), 166 Wis. 1, 163 N.W. 179; *Whipple v. Barton* (1886), 63 N.H. 613, 3 A. 922.

We point out that the cases just discussed do not involve disciplinary proceedings, but involve actions which seek to nullify benefits received by attorneys from those with whom they had a fiduciary relationship. Transactions between an attorney and his client must be closely scrutinized. A gift from a client to his attorney raises a presumption of undue influence sufficient to establish a *prima facie* case and to place the burden on the attorney to prove, by clear and convincing evidence, that the gift was not induced by undue influence. (See generally 7 Am. Jur. 2d *Attorneys at Law* sec. 123 (1980); Annot., 24 A.L.R.2d 1288 (1952).) This court, in *McFail v. Braden* (1960), 19 Ill. 2d 108, held that an attorney was not prohibited from dealing with his client, and transactions, if open, fair and honest when deliberately made, are valid. This court stated:

"[I]mportant factors in determining whether a

transaction is fair include a showing by the fiduciary (1) that he made a full and frank disclosure of all the relevant information that he had; (2) that the consideration was adequate; and (3) that the principal had independent advice before completing the transaction." (*McFail v. Braden* (1960), 19 Ill. 2d 108, 117-18.)

We must consider whether the same considerations are applicable in disciplinary proceedings as in actions to invalidate transfers from a client to his attorney. Rule 5—104(a) of the Illinois Code of Professional Responsibility provides:

"A lawyer shall not enter into a business transaction with a client if they have conflicting interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure." (79 Ill. 2d R. 5—104(a).)

In view of this provision, it would appear that the application of the presumption of undue influence and the requirement that the attorney overcome the presumption by clear and convincing evidence is appropriate in disciplinary proceedings.

The Administrator, in the briefs filed herein, places heavy emphasis on the fact that the respondent did not advise Hilda Waalkes to seek independent legal advice and that she, in fact, did not have independent legal advice concerning the gifts. In *In re Saladino* (1978), 71 Ill. 2d 263, and *In re Anderson* (1972), 52 Ill. 2d 202, this court, in those disciplinary cases, seemed to apply the usual presumption of undue influence and noted that the client did not have independent legal advice concerning the transaction with the attorney. While independent legal advice to the client, or advising the client to secure independent legal advice, may be a very compelling means of rebutting the presumption of undue influence, it is not necessarily an indispensable means. If the attorney can

rebut the presumption in other ways, failure to comply with the independent-legal-advice test will not alone require the attorney to be disciplined.

In this case the Hearing Board found that the respondent had failed to rebut the presumption of undue influence by clear and convincing evidence and that his conduct was unethical. The Review Board affirmed the Hearing Board's findings and conclusions but modified the recommendation as to discipline. While the Hearing Board and the Review Board both found the failure to advise Hilda Waalkes to procure independent legal advice to be part of the respondent's unethical conduct, we find that, aside from the consideration of that element, the respondent has failed to rebut the presumption of undue influence by clear and convincing evidence. Although Hilda Waalkes apparently signed a memorandum of gift, there was no evidence concerning the circumstances surrounding the execution of that document, and, as noted earlier, it was not witnessed by a third party and does not cover all the gifts made to the respondent.

In the instant case, although respondent, in his brief before the Review Board, attempted to characterize his conduct as a "technical transgression" and a failure to follow a "mere formality," it is clear that Hilda Waalkes did not receive the kind of protection which all clients should receive in dealings in which the attorney receives substantial benefit. A totally private transaction, inadequately documented, clearly fails to rebut the presumption of undue influence which arises when the attorney benefits during the attorney-client relationship.

When disciplinary action is warranted, as in this case, the sanctions which may be imposed include censure, suspension and disbarment. In determining the proper sanction, each case is considered unique and the court must look to all the facts and circumstances. *In re Howard* (1977), 69 Ill. 2d 343, 354.

In the instant case, the Hearing Board has recommended a suspension from the practice of law for a period of six months and the Review Board has ordered the delivery of a reprimand. However, the final responsibility for imposing discipline rests with this court. *In re Hopper* (1981), 85 Ill. 2d 318, 323; *In re Sherman* (1975), 60 Ill. 2d 590, 593.

In this case, however, the presumption of undue influence stands alone as evidence of respondent's transgression. There is no clear and convincing evidence that the respondent's conduct was the result of anything more than exceedingly poor judgment. Furthermore, it appears that the conduct complained of in this instance is an isolated event. Nothing else in respondent's background detracts from an otherwise unblemished record. Accordingly, respondent is hereby ordered censured.

*Respondent censured.*

JUSTICE MORAN, dissenting:

After thorough analysis, the majority concludes that disciplinary action is warranted and states:

"[I]t is clear that Hilda Waalkes did not receive the kind of protection which all clients should receive in dealings in which the attorney receives substantial benefit. A totally private transaction, inadequately documented, clearly fails to rebut the presumption of undue influence which arises when the attorney benefits during the attorney-client relationship." (91 Ill. 2d at 17.)

It then imposes a sanction of censure, determining that respondent's conduct resulted from nothing more than "exceedingly poor judgment" and that it was an isolated event. I agree with the majority's conclusion that disciplinary action is warranted. However, I believe that in disciplinary cases where the facts and circumstances are alike or so similar to those in a previous case, it is unfair to the

persons involved to impose disparate sanctions. Consistency is possible because final responsibility for imposing discipline rests with this court.

In *In re Saladino* (1978), 71 Ill. 2d 263, the respondent took legal title to a house he purchased for his client and named himself the sole legatee under the residuary clause of his client's will. With respect to respondent taking title to his client's house, respondent prepared the deed conveying the house to his wife and himself. He testified that this action was taken so the acquisition of an asset would not jeopardize his client's eligibility for government assistance and because his client's poor health might require a sale at a time when she was incapable of participating in such a sale. Respondent stated that to protect his client's interest he, at the same time the other deed was prepared, drew up another warranty deed conveying the property to his client. He also prepared a closing statement that showed her as purchaser. When the client demanded the property be placed in her name, respondent delivered the deed to her the next day at his office. This court found that the respondent may have had good intentions but, nonetheless, his conduct constituted an abuse of a fiduciary relationship. (71 Ill. 2d 263, 270.) With respect to naming himself sole legatee under the will, the court noted that respondent was named as the next responsible person when his client was hospitalized. The court did not believe the will was the result of free deliberation or that his client received independent advice. Notwithstanding the fact that respondent "may have had good intentions" with respect to the conduct regarding the house, and the lack of any indicia of fraud with respect to the will, the court suspended respondent, who had a prior unblemished record, for three months. In imposing a suspension, the court stated:

"[I] t [the length of suspension] should be closely linked to the harm caused or the unreasonable

risk created by the lack of care.

Respondent did not cause actual harm; that is, complainant did not suffer any financial loss. However, she was needlessly exposed to risk of such loss: her interest in the house was unprotected, and a significant part of her estate could have gone to respondent. Where an attorney exposes a client to the risk of loss, jeopardizes the freedom or the pecuniary or privacy interests of a client, or otherwise abuses his or her relationship with a client, whether or not the attorney receives an intended advantage, the attorney has breached a duty, owed to a client, of safeguarding the public." 71 Ill. 2d 263, 276.

In the instant case, the respondent's misconduct was greater than that in *Saladino,* where no actual harm resulted. Here, the undue influence found by the majority resulted in respondent's receipt of nearly $10,000, and financial loss to Hilda Waalkes' estate in that amount. Moreover, here, Hilda Waalkes' niece first questioned respondent about the $6,000 that should have been received from the annuity policy in late January or early February 1976. Respondent said he would look into it. Then, in March 1976, the niece asked respondent if he had a chance to determine what happened to the proceeds of the United of Omaha policy, which should amount to approximately $6,000. Respondent replied that it may have been put into a special account that his firm kept for clients' funds. As noted by the majority, it was not until mid-September that respondent, submitting to requests by the niece's attorney for materials with respect to Hilda Waalkes' estate and information concerning the missing money, told her that he had just then remembered that Hilda Waalkes had given him the proceeds of an annuity policy in 1970 (which was for $6,133.81). The attorney for the niece also testified that, at a meeting in July 1977,

respondent first denied that he had received the $6,133.81 check for the proceeds of the annuity policy. He then admitted receiving it when the attorney reminded him he had sent her a copy of a gift tax return and a gift memorandum. She also testified that at that July meeting respondent first denied receiving the $3,700 certificate of deposit check, but then admitted receiving it after the attorney told him he had endorsed the check. In addition, the Internal Revenue Service had no record of having received a gift tax return for the annuity gift. Further, respondent's copy of the gift tax return revealed only a gift of $6,133.81, rather than the total amount of the gifts, $9,937.82.

As noted earlier, the majority held that respondent failed to rebut the presumption of undue influence and disciplinary action is, therefore, warranted. Although respondent's misconduct did not rise to the level of that in other cases regarding breach of fiduciary relationship (see *In re Anderson* (1972), 52 Ill. 2d 202), I believe the actual receipt of nearly $10,000 resulting from undue influence, to the detriment of Hilda Waalkes' estate, combined with the conduct exhibited by respondent in revealing the existence of the gifts, warrants a penalty more severe than the minimum sanction of censure imposed by the majority.

JUSTICE UNDERWOOD joins in this dissent.