*In re* ESTATE OF VIRGIL ROBERT WOODRUFF, Deceased (William L. Klaskin, Adm'r of the Estate of Virgil Robert Woodruff, Deceased, Petitioner-Appellee, v. Ralla Klepak, Respondent-Appellant).

First District (4th Division)   No. 86—2898

Opinion filed December 10, 1987.

JIGANTI, J., dissenting.

Anthony J. Kogut, of Kogut & Associates, of Des Plaines, for appellant.

Lawrence M. Karlin, of Abelski & Karlin, Chartered, of Chicago, for appellee.

JUSTICE JOHNSON delivered the judgment of the court:

This proceeding was instituted by petitioner William L. Klaskin, the administrator of the estate of Virgil Robert Woodruff, to recover a condominium unit which was placed in a land trust by the decedent. Respondent, Ralla Klepak, is the contingent beneficiary of the land trust, an attorney and personal friend of the decedent. After a bench trial, the trial court found that respondent had not overcome the pre-

sumption of fraud and entered an order requiring respondent to convey her interest in the condominium to the estate and to account for all profits received therefrom. Respondent appeals, raising the single issue of whether the trial court erred in finding that insufficient evidence was presented to overcome the legal presumption of fraud.

We reverse.

The record reveals that the decedent died on May 29, 1984, at the age of 54. He was a bachelor, having no issue. His only collateral heirs were two maternal aunts living in the State of Texas and one paternal cousin. Decedent resided at 175 E. Delaware Place, a condominium unit in the John Hancock building, which he purchased October 10, 1973. At the time of his death title to the condominium unit was held by the Upper Avenue National Bank, as trustee, under a land trust agreement dated September 2, 1973, known as trust number 10214. Between the time of the purchase and the present, the name of the trustee bank was changed from Upper Avenue Bank to Lake Shore Bank. The trust agreement at issue provided that decedent was the owner of the beneficial interest during his lifetime and then to Ralla Klepak, provided she was living and if not, then to his estate. Other than two collateral assignments of the beneficial interest of the trust to secure personal loans to the decedent by Lake Shore Bank, the trust was not modified or changed during its 11-year existence.

Respondent is an attorney licensed to practice law in the State of Illinois. She testified that she met the decedent in 1966 or 1967, when she represented him in a criminal misdemeanor case. They socialized on a regular basis, approximately once a month. Together they dined, attended the opera, spent weekends, and vacationed.

██ █ The law is well settled that conveyances by a client to his attorney are presumed to be fraudulent. If the relationship of attorney and client exists and the attorney received anything of benefit thereby, either by purchase from the client, gift, or by acquiring interests contrary to the interests of the client, the burden is on the attorney to show the fairness of the transaction, that it was equitable and just, and that it did not proceed from undue influence. (*In re Saladino* (1978), 71 Ill. 2d 263, 270, 375 N.E.2d 102, 104.) Undue influence is defined as "any improper *** urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely." (*Powell v. Bechtel* (1930), 340 Ill. 330, 338.) Although the courts closely scrutinize dealings between an attorney and his clients, an attorney is not prohibited from contracting or getting benefits from a client, where

the transaction is open, fair and honest, when deliberately made and not tainted with fraud, undue influence or corruption. *Saladino*, 71 Ill. 2d at 270, 375 N.E.2d at 104; *McFail v. Braden* (1960), 19 Ill. 2d 108, 117, 166 N.E.2d 46, 52.

■ The supreme court clarified the rules regarding presumptions and burdens of proof in cases involving transactions between fiduciaries in *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872. There, the court determined that when an attorney presents sufficient evidence to rebut the presumption, the presumption vanishes. The party seeking to set aside the transaction then bears the burden of persuading the trier of fact that the transaction sought to be set aside was brought about by fraud or undue influence. Thus, such actions require a three-tiered inquiry on review: (1) whether plaintiff established a *prima facie* case of undue influence; (2) if the *prima facie* case was established, whether defendants introduced evidence sufficient to rebut the resultant presumption; and (3) if the rebuttal evidence was sufficient, whether the trial court's determination that the transaction was the product of undue influence is contrary to the manifest weight of the evidence. *Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 961, 466 N.E.2d 977, 993.

The first tier of analysis is unnecessary to the instant case. The trial court found that an attorney-client relationship existed between respondent and the decedent. Since this issue is not presented for review, and we find no plain error, we accept that petitioner did establish a *prima facie* case of undue influence sufficient to raise a presumption thereof.

■ ■ The primary issue before us falls within the second tier of inquiry: whether the respondent presented sufficient evidence to rebut the presumption. "[T]he quantum of evidence necessary in rebuttal depends on the circumstances of each case." (*Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 961, 466 N.E.2d 977, 993.) Courts have required clear and convincing evidence to rebut the presumption where the relationship involved is between an attorney and client. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 465, 448 N.E.2d 872, 878.) However, where the client is enfeebled by age or disease a greater quantum of evidence has generally been required. *Nemeth*, 125 Ill. App. 3d at 960, 466 N.E.2d at 993.

In *Franciscan Sisters* the supreme court considered whether the attorney had presented sufficient evidence to rebut the presumption of undue influence where the attorney received a substantial benefit under the will he prepared for a 96-year-old testatrix. In measuring the evidence by a "clear and convincing" standard, the court pin-

pointed as the critical question the state of mind of the testatrix at the time she signed the will. The attorney presented evidence that, although the testatrix was old, she was alert and intelligent; that he and the testatrix had shared a social relationship for 20 years; and that at the time of the will's execution the testatrix discussed her bequests with another attorney, who was a witness to the signing of the will.

■ Similarly, here, respondent is required to present clear and convincing evidence of the intent and state of mind of the decedent at the time he executed the trust. She presented evidence that the decedent was not enfeebled by age or health; he was 54 years old at the time of his death and managed his own affairs prior to and during the period in which the contested trust was executed. Respondent and decedent shared a close intimate relationship for 17 years. She presented testimony of the decedent's expressed intent to give the trust *res* to respondent as contingent beneficiary. Further, the trust was in existence for 11 years prior to decedent's death. We find that, given the circumstances of this case, respondent presented sufficient evidence to rebut the presumption of undue influence.

■ We turn now to the third and final tier of inquiry: whether the trial court's determination that the trust was the product of undue influence is contrary to the manifest weight of the evidence. As we explained above, when respondent presented evidence contrary to the presumption, rebutting the presumption, the presumption, like a bursting bubble, vanished. Petitioner then bore the burden of persuading the court that the trust was induced by undue influence. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 460-61, 448 N.E.2d 872, 876-77; *Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 961, 466 N.E.2d 977, 992-93.) Here, petitioner does not rely on any conduct, apart from the fiduciary relationship, to show undue influence. Therefore, we can only find that the trial court's determination is contrary to the manifest weight of the evidence.

For the foregoing reason the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

LINN, J., concurs.

JUSTICE JIGANTI, dissenting:

Metaphorically, the bubble did not burst. The presumption has not been overcome because the necessary quantum of proof has not been

introduced to satisfy the clear and convincing evidence standard.[1] The judgment of the trial court, I believe, should be affirmed. The facts must be amplified in order to properly understand this cause. As the majority states, Virgil Robert Woodruff had never been married and died in 1984 at the age of 54. The property in question was condominium unit 5024 in the John Hancock building in Chicago. He had purchased that unit in October 1973, almost 11 years prior to his death. Title was placed in a land trust established at the closing. Woodruff was the beneficiary. Upon his death, the property was to go to Ralla Klepak, if she was alive; if not, then to Woodruff's estate.

Woodruff met Klepak in 1965 when she represented him in a criminal misdemeanor proceeding. They became friends, dined together, attended the opera and vacationed together. She testified that she saw him once a month until three years before he died. Central to this proceeding is the purchase of the condominium in the late summer and early fall of 1973. In answer to the petition for citation, Klepak denied that she acted as the attorney for Woodruff in the purchase of the condominium or any other real or personal property. She did advise him in the manner and requirements for filling out mortgage documents. Further, she denied that she prepared a trust agreement on behalf of the decedent and that she did not participate, authorize or direct that any inquiries, oral or written, be directed to her, either as an individual or as an attorney. Klepak testified that Woodruff asked her if she would represent him in the purchase of the condominium. She told him that she could not because she did not have any knowledge of real estate law. Woodruff asked if she would refer him to someone. She referred him to Ralph Goren. Goren testified that he represented Woodruff at the closing. Woodruff had been referred to him by Klepak, whom he had known for 35 years. However, Goren destroyed his file and had no independent recollection of any conversations with Woodruff or of the specific services that he provided for Woodruff.

The role of Klepak at the time of the purchase must be examined very specifically, particularly in light of her denial that she represented Woodruff and her denial that she participated in the preparation of the trust agreement. On April 23, 1973, the sellers sent a letter to Woodruff indicating that the original purchase contract was enclosed and requesting $1,000 earnest money. Two months later, on

---

[1]For an extended analysis of the status of presumptions in civil cases in Illinois, see Graham, *Presumptions in Civil Cases in Illinois: Do They Exist?* 1977 S. Ill. U.L.J. 1.

July 23, 1973, Woodruff signed a purchase application, deposited $1,000 with the sellers and applied for a mortgage with the Upper Avenue National Bank. The name of the bank has since been changed to the Lake Shore National Bank (Lake Shore Bank). The mortgage application signed by Woodruff indicated that his attorney was Klepak. Klepak's file contained both a fully executed copy of the contract and one signed only by Woodruff. Klepak testified that Woodruff asked her to look over the contract. On August 16, 1973, Woodruff deposited the balance of the earnest money required by the contract. On August 28, 1973, Klepak wrote the first of several letters to Lake Shore Bank in which she advised the bank that "my client, Mr. Woodruff, will take title in the above-referenced land trust with your bank as trustee. Please forward the necessary documents in order that said trust may be established." That letter made a specific reference to the land trust number. On August 30, 1973, Lake Shore Bank sent a letter to Klepak which stated that they were enclosing the documents that were required to set up the land trust. The trust agreement is dated September 2, 1973. The mortgage and note were dated September 4, 1973, and executed by Lake Shore Bank as trustee. On September 5, 1973, Lake Shore Bank sent Klepak the mortgage documents used in connection with the condominium purchase. On September 10, 1973, Klepak sent a letter to the bank thanking them for the documents that had been requested. She found the documents to be in order and would "request that my client execute same." She also commented on the fact that there was no necessity for an assignment of rents because the condominium document precluded the rental of the apartment. On that same day, Klepak wrote a letter to Woodruff advising him to sign "documents which have been prepared by the bank and which I have reviewed."

On September 26, 1973, the sellers' attorneys wrote to Klepak setting out the procedure to be followed at the closing. That letter also stated that the sellers had been informed that she represented Woodruff and that it was their understanding that Woodruff had asked that the sellers communicate with him through Klepak and that all documents were to be forwarded to Klepak. Klepak testified that she did not respond in writing or otherwise to the letter of September 26 and did not otherwise indicate to the sellers' attorneys that she would not be representing Woodruff at the closing.

Lake Shore Bank sent the original executed trust agreement to Klepak on October 9 and requested that she return a fully executed and recorded deed in trust. The deed in trust was notarized by Klepak and was dated October 10, 1973. On October 26, 1973, Klepak

mailed to Woodruff certain closing documents, including the trustee's deed and the closing statement. Lake Shore Bank mailed copies of the mortgage documents and an appraisal to Klepak on December 10, 1973, and requested a $150 document preparation fee. Klepak, by letter, objected to the charge. That letter is responded to and on January 10, 1974, Klepak wrote a second letter to the bank again objecting to the fee. In both letters she referred to Woodruff as her client.

On the morning of May 31, 1984, two days following Woodruff's death, Klepak presented to Lake Shore Bank Woodruff's death certificate and a letter of direction signed by her. She requested that the bank prepare a certified copy of the trust agreement and also a letter to the condominium home owners' association saying that she was the beneficiary. The documents were prepared as requested. Robert Skowronski, a trust officer of the bank, testified that he had a conversation with Klepak while the documents were being prepared. He stated that Klepak had informed him that she and Woodruff had been very dear and close friends and that she had given Woodruff the money for the condominium. He further testified that Klepak said that she did not want the money back but instead agreed with Woodruff that "he was going to name her beneficiary, and she had the documents prepared that way." Klepak acknowledged that she had a conversation with Skowronski on that date and did not deny or rebut the substance of the conversation.

Sylvia DeJesus testified that she had known Woodruff in the late sixties. She used to go with him to the theater, the opera and some dinner parties. She saw him about once a month or every other month until a year and a half before he died. Woodruff introduced Klepak to DeJesus in the late sixties at a dinner party. DeJesus testified that the relationship with Klepak was strictly social, although in 1979 Klepak represented her parents in the closing of a real estate transaction. DeJesus stated specifically that Klepak never represented her as an attorney. On cross-examination, however, she acknowledged that Klepak did represent DeJesus when DeJesus was divorced.

DeJesus testified that in the first or second week of October 1973, she had dinner with Klepak and Woodruff at the Chelsea Restaurant in the Continental Hotel. She heard Woodruff and Klepak have a conversation regarding a document. DeJesus heard Klepak say, "Why don't you leave this condominium to your aunt and your family or your friends." Woodruff responded "that he wanted [Klepak] to have this [the condominium] because she was his dear friend and that through the years she had always been a good friend and he couldn't think of anybody else that should have it." Klepak notarized a docu-

ment at dinner. DeJesus believed that Klepak had the notary seal in her purse.

William Klaskin testified that in November of 1983 he had been shown an envelope by Woodruff at the time Woodruff was about to take a trip. Woodruff instructed Klaskin that if anything happened to him Klaskin was to open it. The letter was located on his blotter in the library of his condominium. A day or two after Woodruff died, Klaskin found the envelope on the blotter in the library. Inside the envelope was a letter with two entries and Woodruff's signature appeared after each entry. One entry stated that it was being written "November 11, 1980 at Midnight":

"In the event of my physical death or illness, Mr. William L. Klaskin should be in full charge of *my estate*. Included are funds at Upper Avenue Bank, Chicago, invested in 90-day periods, *Apartment 5024 of this building* [John Hancock] which is in trust at the same bank and my other earthly possessions in my home. He alone may make proper disbursement to others I care for and who need financial aid. These are my wishes. I am of sound mind and I write these words with great love for all of humanity.

In the settlement of my estate, Ms. Eva Scaramella of the Upper Avenue Bank will be of assistance. And my aunt, Wanda Ballerstedt, Texas; Marika Von Viczay of this city will echo these factual wishes of mine." (Emphasis added.)

The second entry dated "December 6, 1983, 1:20 a.m.," stated:

"Prior to a trip to Switzerland, Egypt and England. The name of the bank has changed to Lake Shore Bank. My principle possessions now are in this apartment condominium. And the mortgage on this home is held in trust, as indicated above, at Lake Shore, downstairs. Mr. Klaskin, as my loyal and trusted friend—and my brother in various lifetimes—is to be left fully in charge of my remaining earthly affairs, as indicated above. I send love and gratitude to certain others. And they know who they are."

The letter was notarized the following day, December 7, 1983.

The trial judge issued a nine-page opinion which contained his judgment. The judgment was in favor of the estate of Woodruff and against Klepak and ordered her to assign the beneficial interest in the trust to the estate. It further ordered Klepak to account for all rents and profits received by her from possession of the condominium. The opinion explained the court's findings. Essentially, the court related the facts surrounding the transaction substantially as related above

and concluded that the events clearly show that "an attorney-client relationship existed between Klepak and Woodruff at the time of the purchase of the unit, despite the fact that another attorney was physically present at the closing on behalf of Woodruff and that Klepak did not charge any legal fees for the work performed." The court noted the presumption of undue influence arising under those circumstances and specifically stated that it was the burden of Klepak to show by clear and convincing evidence that she made a full and frank disclosure of all the relevant facts; that the consideration was adequate; and that Woodruff had independent advice before completing the transaction. The court then noted that Skowronski testified that Klepak said that Woodruff "insisted on her being the beneficiary, so she had the documents prepared that way." The court observed that Klepak denied preparing the deed or trust agreement.

The court contrasted the testimony of DeJesus with the document Woodruff executed which stated that Klaskin should be in full charge of his estate, including the condominium. As the trier of fact, the court concluded that the evidence fell short of the evidence required to rebut the presumption of undue influence.

Klepak does not dispute the court's finding that an attorney-client relationship existed between Klepak and Woodruff. A fiduciary relationship exists between an attorney and client as a matter of law and where the attorney benefits from the transaction during the existence of that relationship, the burden is on the attorney to show that the benefit was not the result of undue influence. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 464, 448 N.E.2d 872, 877; *In re Schuyler* (1982), 91 Ill. 2d 6, 13, 434 N.E.2d 1137, 1140.) An attorney may deal with his client if the transaction is fair. The factors to be considered in determining whether the transaction is fair are that the attorney made a full and frank disclosure of all relevant information that he had; that the consideration was adequate; and that the party had independent advice before completing the transaction. (*In re Saladino* (1978), 71 Ill. 2d 263, 270-71, 375 N.E.2d 102, 104; *McFail v. Braden* (1960), 19 Ill. 2d 108, 117-18, 166 N.E.2d 46, 52.) It is extremely difficult to overcome the presumption of undue influence where no third party is privy to the transaction. (*In re Schuyler* (1982), 91 Ill. 2d 6, 434 N.E.2d 1137.) Independent legal advice to the client, or advising the client to secure independent legal advice, is a very compelling means to rebut the presumption of undue influence but it is not an indispensable means. The attorney can rebut the presumption in other ways. 91 Ill. 2d at 16-17, 434 N.E.2d at 1142.

The majority reverses the trial court's finding that the presumption has not been overcome. The majority reasons the fact that Woodruff was not enfeebled by age or health, that Woodruff and Klepak had an intimate relationship for 17 years and that DeJesus and Klepak testified that it was Woodruff's expressed intent to give the trust *res* to Klepak and finally that the trust was in existence for 11 years was sufficient to overcome the presumption. In my estimation, the majority gives too slender consideration to the heavy burden a party ·has to overcome the presumption. It was within the trial court's province to determine whether clear and convincing evidence had been introduced. *Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 466 N.E.2d 977; E. Cleary & M. Graham, Handbook of Illinois Evidence §302.5 (4th ed., 1986 Supp.)

Weighed against the factors enumerated by the majority is the fact that the evidence fails to show that a full and frank disclosure was made to Woodruff of all the relevant factors; there was no consideration; and Woodruff did not have independent advice before completing the transaction. Klepak was Woodruff's attorney in the transaction. There is evidence that she had the documents prepared naming her as the beneficiary. The evidence specifically shows that Woodruff did not have the benefit of independent advice as to the consequences of what he was doing at the time he executed the trust agreement. The fact that Woodruff was not represented is a compelling factor in determining whether the presumption has been overcome. The setting here is in sharp contrast to *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872, where another attorney questioned the decedent about the fact that her attorney was going to receive a substantial amount under the will. Woodruff's letters of 1980 and 1983 belie the suggestion that he was aware of the relevant fact that the condominium would pass to Klepak by virtue of the trust agreement he signed at the time he purchased the condominium and that he had no power to dispose of it by will. He believed his property, including the condominium, would be disposed of by his "loyal and trusted friend, Klaskin." Klepak portrays herself as an attorney not capable of representing Woodruff in a real estate closing, yet she engaged in extensive correspondence concerning the closing and commented on the lack of necessity of an assignment of rents and objected to certain bank charges. DeJesus, Klepak's independent witness, denied that she and Klepak had a business relationship until on cross-examination she admitted that Klepak represented her in her divorce. The *Dean* case cautions that the potential for abuse is great when an attorney benefits from a client and that it

is usually unnecessary for lawyers to prepare documents under which the lawyer will receive a benefit. The trial court found that admonition most appropriate here. I do also.

I would affirm the judgment of the trial court.