(No. 35498.—

CURTIS McFAIL *et al.*, Appellees, *vs.* ZEDRICK T. BRADEN, SR., *et al.*, Appellants.

*Opinion filed March 31, 1960.*

HOWARD T. SAVAGE, of Chicago, for appellants.

HENRY A. STANBURY, of Chicago, (WILLIAM C. WINES, and LEON N. MILLER, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiffs, alleging themselves to be the next of kin and heirs-at-law of Ida Chandler, deceased, brought this action in the superior court of Cook County to set aside two deeds pertaining to an improved parcel of Chicago real estate, and for related relief including an accounting for rents and profits. By one of such deeds Ida Chandler had conveyed the premises to Geraldine Beauchamp, a secretary employed by Zedrick T. Braden, Sr., an attorney at law; by the other deed, and as part of the same transaction, Geraldine Beauchamp conveyed to Ida Chandler and Zedrick T. Braden, Jr., a son of Braden, Sr., as joint tenants. Miss Beauchamp, the two Bradens and the wife of Braden, Jr., were named as defendants and here appeal from a decree which found that Braden, Jr., was holding title as constructive trustee for the heirs-at-law of Ida Chandler, ordered that the two deeds be vacated and set aside, and re-referred the cause to a master for an accounting. A freehold is involved, (*Vrooman* v. *Hawbaker,* 387 Ill. 428,) and as required by section 50(2) of the Civil Practice Act, the trial court has certified there is no just reason for delaying the appeal. See: Ill. Rev. Stat. 1957, chap. 110, par. 50(2) ; *Ariola* v. *Nigro,* 13 Ill.2d 200.

The complaint alleged in substance, that Ida Chandler, an elderly woman enfeebled by physical and mental infirmities, had employed Braden, Sr., as her attorney to advise her with respect to the real estate and that the latter, by acquiring his client's property without consideration and by putting its title in the control of his son in such a

manner as to defeat Ida Chandler's frequently expressed wish that her property pass to her next of kin, violated the fiduciary relationship which existed between himself and his client.

Defendants' answer, in turn, denied that plaintiffs were the heirs-at-law of Ida Chandler and alleged that Braden, Sr., was her nephew, denied that an attorney-client or other fiduciary relation existed between them, and alleged that Ida Chandler had sought the aid of Braden, Sr., and had freely, knowingly and voluntarily caused the deeds to be executed as an inducement and in furtherance of an agreement whereby Braden, Sr., would receive the property and, in return, use his own personal funds to cure defaults in encumbrances upon the real estate, to pay expenses of maintaining and operating the premises, to save the property from creditors, and to pay any personal indebtedness and expenses of Ida Chandler, while permitting Ida Chandler to live on the premises and to collect the rents and profits therefrom during her lifetime. Further, the answer alleged that Braden, Sr., did in fact expend his own personal funds for the purposes alleged above. that any rents he had collected were used for such purposes, and that Ida Chandler had been permitted to occupy an apartment while she lived and to collect all rents from the building, except for a period of six months immediately preceding her death when Braden, Sr., had collected rents of between $1,200 and $1,400. By way of reply, plaintiffs denied Braden, Sr., was a blood relative of Ida Chandler, and denied that she had collected all rents after the deeds were executed.

The cause was referred to a master in chancery who heard the evidence and found that both deeds had been executed for the convenience of Braden, Sr.; that they were without consideration; that they were not made as the result of any contract or agreement between Ida Chandler and Braden, Sr.; that a fiduciary relationship of attorney and client existed between Braden, Sr., and Ida Chandler

when the conveyances were made; and that Braden, Sr., had failed in his burden of proving that the transaction was fair and free from fraud or undue influence. He therefore recommended that the conveyances should be set aside and, after objections and exceptions to his report had been disposed of, a decree was entered in accordance with his recommendation.

Facts in the record disclose the real estate in question is improved with a three-story brick building which has a four-room apartment in the basement, and single eight-room apartments on each of its three floors. At all times during the period in question, Ida Chandler and persons to whom she let rooms occupied the first floor apartment. A witness for plaintiffs estimated the value of the building as being $25,000 in 1949, and, due largely to an increase in rental income, expressed an opinion the value was $30,800 in 1957. Although defendants take issue with these estimates, no contrary evidence as to value was offered or introduced.

Ida Chandler and her husband purchased the building in 1920 and she became its sole owner upon his death sometime prior to 1934. It appears she continued to live in the the building and manage its operation without difficulty until 1946 when she was struck by a car. Following this incident her physical condition was poor, she relied upon other people in the building to collect her rents and pay her bills, and witnesses testified she was ill and confined to her bed in the early months of 1949. She was then 83 years of age, but whether she had declined mentally was a point upon which opposing witnesses, all non-experts, did not agree. From a financial standpoint it appears that, in early 1949, the property was subject to a mortgage indebtedness of approximately $3,000 and balances totalling about $200 on two home-improvement loans. In addition, Ida Chandler owed a balance of approximately $390 on a personal loan she had obtained from a bank in January,

1948, and she and Seaborn Chandler, the latter identified in the record as a stepson, had negotiated a personal loan of about $500 from another bank on December 4, 1948. None of these obligations were in default and, except in the case of the two home-improvement loans which were earlier paid out, monthly payments on all the accounts were made until April, 1950, when the balances of the mortgage and personal loans were paid in full, and all notes mailed to "Braden, Atty." A release of the mortgage was issued April 20, 1950, but was not recorded by Braden, Sr., until September 12, 1956, after Mrs. Chandler's death. To recapitulate, it appears, roughly, that Ida Chandler had obligations of $4,100 on March 1, 1949.

On March 4, 1949, Ida Chandler executed a quitclaim deed conveying the premises to Geraldine Beauchamp who, on the following day, executed a quitclaim deed conveying to Ida Chandler and Zedrick T. Braden, Jr., in joint tenancy. Both deeds were for a recited consideration of "less than $100." Miss Beauchamp, as previously related, was a secretary in the law office of Braden, Sr., while Braden, Jr., who was admitted to the practice of law in 1955, was then 21 years of age and apparently a student. It may be stated now that Braden, Jr., and Miss Beauchamp do not contest the finding below that the conveyances to them were for the convenience of Braden, Sr., thus the only issue is whether Braden, Jr., holds his title in trust for his father, or for the heirs of Ida Chandler. Cf. *Prickett* v. *Prickett*, 379 Ill. 181.

The details surrounding the execution of the deed of March 4, 1949, are found largely in the testimony of Mattie Newby, a defense witness who roomed in Ida Chandler's apartment from 1946 to 1952. She testified to a conversation in February, 1949, during which Ida stated she felt she had gone as far as she could, that she had "a cousin, a good lawyer," whom she wished to take care of her business and whom she wanted the witness to call. In

response to several telephone calls Braden, Sr., came to the apartment on March 2d or 3d and talked to Mrs. Chandler in the presence of Mattie Newby. According to the latter, Ida said to the attorney: "I am glad you have come, because you always told me if I ever needed you, and I sure need you now. I am sick and I want to turn everything over to you; I want you to take care of it for me," following which Braden, Sr., said he could take over and explained that, in order to protect Ida Chandler in the event something would happen to him, he would cause title to be placed in joint tenancy with his son. Mrs. Chandler then purportedly said she wanted such a plan.

Braden, Sr., returned to the apartment on March 4, accompanied by an associate, attorney Alvin H. Moss, at which time Ida Chandler executed the deed to Geraldine Beauchamp. Moss testified he had prepared and notarized the deed, as well as the second deed executed by Geraldine Beauchamp the following day, and said he read it to Ida Chandler, who was in bed, and explained she was turning her property over to Braden, Sr. According to him she replied: "that is the way I want it." On cross-examination, he stated he thought Braden, Sr., had also prepared some notes in connection with the transaction and admitted testifying at discovery deposition that the papers exhibited to Ida Chandler included "printed forms of notes." Further, on cross-examination, he admitted having previously quoted Mrs. Chandler as saying that she was sick and could no longer "carry" the building, and that "I want you, Zedrick, to take care of it for me."

According to Mattie Newby, who was also present, Braden, Sr., had some papers, the identity of which she did not know, all of which were signed by Ida Chandler. Thereafter, at the latter's direction, the witness procured and gave to Braden, Sr., five account books relating to the mortgage and loans previously described.

Several witnesses for the plaintiffs testified to conversa-

tions with Ida Chandler subsequent to March 4, in which she described Braden, Sr., as being either her attorney or agent. Oscar McGee, the janitor of the building, said he was told Braden, Sr., was her agent and that he should get his pay from Braden. William Watson, a tenant, met Braden, Sr., in 1949 and was told by Mrs. Chandler that he was her lawyer, that she had employed him to handle the building and take care of things. Patricia Franklin, daughter of a tenant, testified Mrs. Chandler told her Braden, Sr., was going to act as agent and handle the legal business. Jodie McCullough, another tenant, stated he was told by Braden, Sr., in 1950, that he, Braden, was managing the building for Mrs. Chandler, and that the latter confirmed this to the witness. Curtis McFail, Jr., one of the plaintiffs, testified he first met Braden, Sr., at the building in March, 1949, and that Ida Chandler introduced Braden to him as the man who was "taking charge of the place."

Following the events of March 4, 1949, it appears to be undisputed that Ida Chandler continued to collect rent from the roomers in her first floor apartment. As to the other apartments, however, it appears that rentals were paid directly to Braden, Sr., or his agents on most occasions but, in respect to one apartment occupied by Jodie McCullough, that they were sometimes paid to Mrs. Chandler, or at least receipted for in her name through the year 1954. There is dispute as to whether she retained the rents she collected, or turned them over to Braden, Sr., after keeping enough for her personal expenses. Regardless of who received the rents, it is certain that Braden, Sr., handled all negotiations for rentals and paid most operating expenses. He caused repairs to be made too, but their extent and the amounts of his own money he expended, if any, were points of conflict left to be resolved in the accounting.

On or about June 1, 1956, Braden, Sr., alleging him-

self to be a nephew, filed a petition in the county court of Cook County to commit Ida Chandler as a mentally ill person, and it appears that, on June 7, 1956, she was committed to the Illinois State Hospital where she died, intestate, on July 31, 1956, at the age of 90 years. Following what they considered evasions and unsatisfactory explanations by Braden, Sr., the heirs and next of kin of Ida Chandler started this litigation on December 12, 1956. In the court below, and upon this appeal it has been defendants' principal contentions that the proof fails to show either the existence of a fiduciary relation between Ida Chandler and Braden, Sr., or a violation thereof if the relationship did in fact exist.

In the present case, the complaint charged, and there was ample proof, that a relation of attorney and client, and thus a fiduciary relationship as a matter of law, existed between Braden, Sr., and Ida Chandler when the deed of March 4, 1949, was executed. Without regard to subsequent statements by Ida Chandler regarding the relation, the testimony of defendants' witness, Mattie Newby, is sufficient to establish that Braden, Sr., was called to the apartment because he was a lawyer, and because Mrs. Chandler wanted his legal advice as to how she could be relieved of the responsibility of managing her property. Although Braden, Sr., now asserts that he was a nephew of Ida Chandler, that he did not act as an attorney and that the entire transaction was a free and voluntary act of the part of Mrs. Chandler, there is not one iota of competent proof that he was a relative, or that she had any intention of giving him her property, either outright or as an inducement to some agreement. The sole proof is, rather, that she sought only his legal advice for a solution of her problems, and that it was he who recommended the execution of the deeds in question. Moreover, even if it could be resolved that a relation of attorney and client did not come

into being, the facts in evidence are in themselves sufficient to show that a fiduciary relation existed. Ida Chandler was 83 years of age. She was in poor physical condition and confined to her bed. She was concerned about her inability to properly manage her property and had, in the recent past, been dependent upon strangers to collect her rents and pay her bills. In her hour of need she turned to Braden, Sr., and from Mattie Newby's testimony it is to be seen that Mrs. Chandler reposed her utmost confidence and trust in him, and relied upon him to solve her problems. When Ida Chandler's situation is contrasted with Braden's position of being an educated person, schooled in the law, we think it is clear a fiduciary relationship came into existence.

Courts of equity will scrutinize with jealous vigilence transactions between parties occupying fiduciary relations toward each other. (*Kosakowski* v. *Bagdon,* 369 Ill. 252.) A deed will not be held invalid, however, if made by the grantor with full knowledge of its nature and effect, and because of the deliberate, voluntary and intelligent desire of the grantor. (*VanEpps* v. *Arbuckle,* 332 Ill. 551.) Where a fiduciary relation exists, the burden of proof is on the grantee or beneficiary of an instrument executed during the existence of such relationship to show the fairness of the transaction, that it was equitable and just and that it did not proceed from undue influence. (*Suchy* v. *Hajicek,* 364 Ill. 502.) The same rule has application where an attorney engages in a transaction with a client during the existence of the relation and is benefited thereby. (*Rose* v. *Frailey,* 10 Ill.2d 514.) Conversely, an attorney is not prohibited from dealing with his client or buying his property, and such contracts, if open, fair and honest, when deliberately made, are as valid as contracts between other parties. (*Masterson* v. *Wall,* 365 Ill. 102.) As pointed out in the case last cited, important factors in determining

whether a transaction is fair include a showing by the fiduciary (1) that he made a full and frank disclosure of all the relevant information that he had; (2) that the consideration was adequate; and (3) that the principal had independent advice before completing the transaction. See also: *Dombrow* v. *Dombrow,* 401 Ill. 324; *Schueler* v. *Blomstrand,* 394 Ill. 600.

Defendants have not sustained their burden of showing that the deed from Ida Chandler was fairly obtained, or that she acted of her own volition or on independent advice. It was the theory of defendants' answer, and it is the basis of their argument here, that the deed was executed by Ida Chandler as her free and voluntary act as an inducement and part of an agreement whereby Braden, Sr., in return for the property, was to cure defaults in encumbrances, pay expenses of operating and maintaining the premises, and pay the personal indebtedness of Ida Chandler, all out of his personal funds. There is, however, little in the record to support such a theory and much which militates against it. The proof does not show that Ida Chandler had any thought of disposing of her property in return for financial assistance, care and support. It shows, rather, that she had no conception of how her property and personal problems were to be resolved until she had solicited and received the advice of Braden, Sr. Similarly, there is a complete absence of proof that an agreement which was to make the deed absolute was either discussed or reduced to definite terms at the time the deed was executed. Had such been the case, we think it reasonable to assume that defendants' witnesses, Moss and Newby, who were present when the transaction was culminated, would have been aware of such fact and would have so testified. Further, with respect to the claimed agreement, we cannot overlook that there were in fact no defaults in the encumbrances upon the premises, and that, from the evidence in this record, it is shown Ida Chandler was motivated by consideration of

her health, rather than financial difficulties which threatened to cause a loss of the property.

It is true Braden, Sr., did in fact take over the management and operation of the premises, that he paid some bills in connection therewith, and that he did pay out the encumbrances and personal bank obligations of Ida Chandler. There is nothing in the proof to indicate that his conduct resulted from any agreement or contract upon which the deed was conditioned. Nor does the proof of his payment of the obligations serve to establish there was a fair and adequate consideration for the deed. The evidence showing the value of the property to be $25,000, and the amount of Ida Chandler's indebtedness as being only about $4,100, would hardly indicate a fair and just consideration, and in looking to the source of the funds with which Braden, Sr., made his payments, the fact remains that he was receiving a major portion of the income from the property both before and after Ida Chandler's obligations were ultimately paid.

We think, too, the proof fails to establish that Ida Chandler fully knew and understood the consequences of her deed. Although Braden's colleague, attorney Moss, testified he explained to Mrs. Chandler that she was turning her property over to Braden, his statements given at the discovery deposition, as well as the testimony of Mattie Newby, show that the depth of the grantor's understanding was that the deed would enable Braden, Sr., to take care of the property for her. Again, if the deed was in fact conditioned upon an agreement or contract for financial aid and support as defendants now contend, it is reasonable to assume that a fair explanation of the transaction would have required a statement of its terms in relation to the effect of the deed. The evidence shows, too, without contradiction, that Ida Chandler was completely without independent counsel during the transaction with her attorney. Considering her age, her physical condition and the relative

experience and education of the parties, the transaction could well be said to be unfair and presumptively fraudulent on this basis alone.

The case involves no questions of law that have not been well-settled and both the master and the chancellor have found that the evidence sustains the allegations of the complaint. When all the facts and circumstances are considered, the conclusion is inescapable that a fiduciary relation of attorney and client existed, and that it was violated when Braden, Sr., acquired title to his client's property in the manner he did. Some contention is made by defendants that the allegations of a fiduciary relationship and of fraud do not contain sufficient factual averments to support the bill. Apart from the fact that we find no merit in substance to such claim, it does not appear that such an issue was timely raised or passed upon in the court below, and we have held that the sufficiency of a complaint may not be challenged for the first time in a court of review. (*Vlahos* v. *Andrews,* 362 Ill. 593; *Lowden* v. *Wilson,* 233 Ill. 340.) We conclude that the chancellor properly ordered the deeds in question to be vacated and set aside.

Contention is next made that evidence of pedigree, by which the relationship of the plaintiffs to Ida Chandler was established, was insufficient because a proper foundation was not laid for hearsay declarations of kinship testified to by one of the plaintiffs, Harry Ellis. (See: *Sugrue* v. *Crilley,* 329 Ill. 458, at 465.) Even conceding the merit of the contention, we do not find that objection was made on this basis at the hearing, or included in the objections to the master's report. Furthermore, there is competent evidence from other sources in the record which satisfactorily establishes the relationship of all the plaintiffs to the deceased and which, in most instances, was given by witnesses who withstood arduous cross-examination on the subject. In the absence of a showing to the contrary, the presumption is that the master and chancellor acted only

upon competent evidence, and if there is sufficient competent evidence, error in admitting incompetent testimony will be regarded as harmless. Cf. *Champion* v. *McCarthy*, 228 Ill. 87.

The final contention of defendants is that the master erroneously interpreted section 2 of the Evidence Act, the so-called Dead Man's Statute, to prevent Braden, Sr., from testifying to encumbrances on the property at the time of the conveyance, and to his payment of such encumbrances. However, with the filing of a supplemental abstract by plaintiffs and an additional abstract by defendant, it now appears to be conceded that the master did in fact receive into evidence books, checks and other documents relating to the encumbrances and considered them in making his findings. From our examination of the record, it appears the master expressly ruled that Braden could testify to books, documents and the like in his possession, but refused only to hear evidence relating to conversations and transactions with the deceased, and in no way restricted the documentary proofs of amounts claimed to have been spent.

Plaintiffs filed a cross-appeal from several portions of the decree but have argued and presented authority only in support of one point, *viz.*, that the court erred in taxing a part of the costs against them. In this respect, the decree apportioned the master's fee of $4,586.65, equally between the parties.

In general, the taxation of the fees of a master and the apportionment thereof rests in the sound discretion of the court, in the exercise of which it may impose liability for such fees equally on both parties, or in such other proportion as it deems just and equitable under the circumstances of the case. (*Jones* v. *Felix*, 372 Ill. 262; 7 I.L.P., Chancery, sec. 398.) It is difficult to see why any burden of the costs should be imposed upon the plaintiffs in this case, or how justice and equity in any manner requires that defendants be relieved of the full burden.

122

For the reasons stated, the decree of the superior court is reversed insofar as it taxes a portion of the costs against the plaintiffs, but is affirmed in all other respects. The cause is remanded with directions to enter a decree in accordance with the view herein expressed.

*Affirmed in part and reversed in part and remanded, with directions.*