WAYNE P. GRANE, Plaintiff-Appellant, v. HUBERT GRANE, JR., *et al.*, Defendants-Appellees.

Second District   No. 84—1180

Opinion filed May 21, 1986.

David J. Fischer, David J. Kendle, and Lisa A. Masucci, all of Cassiday, Schade & Gloor, of Chicago, for appellant.

James J. Casey and A. Benjamin Goldgar, both of Keck, Mahin & Cate, of Chicago, and Robert C. Hultquist and Richard F. Hudzik, both of Hultquist & Hudzik, of Downers Grove, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

This appeal stems from a complaint originally filed by plaintiff on June 30, 1983, concerning oral agreements entered into between the parties in the early 1970's. After some defendants raised the existence of an arbitration agreement as a defense, plaintiff requested a stay of the arbitration proceeding and a hearing pursuant to section 102(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1981, ch. 10, par. 102(b)). This request was denied. Plaintiff amended his complaint seeking a rescission of the alleged arbitration agreement and adding the arbitrator as a party defendant. Amended count VIII then sought to impose damages against the arbitrator for fraudulent conduct occurring prior to the execution of the arbitration agreement. The defendant arbitrator filed a motion to dismiss because, as an arbitrator, he was immune from suit. His motion was granted.

While the facts are fully set out in our original opinion, *Grane v. Grane* (1985), 130 Ill. App. 3d 332, some brief resume is needed here. Plaintiff is the son of defendant Hubert Grane, Sr., and the brother of defendants Hubert, Jr., Fred C. and Daniel T. Grane. The corporate defendants are family companies, and the Harris Bank is trustee of certain Grane family trusts. The individual parties signed an agreement on December 10, 1980, which appointed Thomas J. Boodell, Jr., with the "sole authority to resolve any conflicts existing between the Parties and to compromise any disputes concerning equity interests as he, in his sole judgment, after consultation with Mr. Hubert Grane, Sr., shall determine." A dispute arose concerning a division of the family businesses, and plaintiff filed a complaint on June 30, 1983, seeking a declaratory judgment determining the rights, interests and liabilities of the parties in the Grane family businesses.

On July 26, 1983, plaintiff filed a motion for leave to file a second amended complaint, which contained count VIII, requesting rescission of the arbitration agreement and adding Thomas J. Boodell, Jr., as a

defendant. Count VIII alleged that in 1980, Boodell had fraudulently induced plaintiff to sign the arbitration agreement.

During September or October 1983, Boodell began an arbitration proceeding to resolve the family disputes, but the plaintiff elected not to participate. On October 28, 1983, plaintiff filed a motion to stay the arbitration proceeding and contested the validity and enforceability of the 1980 agreement. The court denied the motion, and plaintiff appealed. On November 7, 1983, plaintiff's motion for a stay of the arbitration and court proceedings pending the appeal was denied. That order was appealed from. A decision was rendered by this court in that appeal on January 28, 1985, in *Grane v. Grane* (1985), 130 Ill. App. 3d 332. The decision of the trial court to refuse to stay the arbitration proceedings was reversed because the plaintiff was entitled to a hearing under section 102(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1981, ch. 10, par. 102(b)). (*Grane v. Grane* (1985), 130 Ill. App. 3d 332, 334.) While the plaintiff's first appeal was pending, the trial court dismissed Boodell, finding him immune from suit. The plaintiff appeals from the court's dismissal.

Defendant contends that as the arbitrator of the Grane family dispute he is immune from personal liability for any actions in conjunction with the arbitration. If he is not determined to be immune in light of current Illinois law, then he argues that the scope of immunity should be expanded to protect him, because of a strong State policy favoring arbitration and protecting arbitrators. Plaintiff responds that defendant cannot be dismissed prior to a determination of the validity and enforceability of the arbitral agreement which cloaks defendant with immunity. If there is no valid arbitration agreement, then defendant should be found liable. If it is found to be valid, the plaintiff urges this court to still find defendant liable because his acts were outside the scope of arbitral immunity.

Plaintiff-appellant's first contention is that Boodell is not entitled to the protected status of an arbitrator unless and until the court finds, based on a section 102(b) hearing, that the "Agreement and Understanding" is a valid agreement to arbitrate. Plaintiff has contested this in his amended count VIII; his motion to stay the arbitration proceedings; his request for a hearing pursuant to section 102(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1981, ch. 10, par. 102(b)), which was the subject of this court's prior opinion; and during numerous other occasions throughout the record. We reversed the lower court's denial of plaintiff's motion to stay the pending arbitration proceedings, and remanded the cause for a hearing as to the validity and enforceability of the arbitration agreement pursuant to section 102(b)

of the Uniform Arbitration Act. *Grane v. Grane* (1985), 130 Ill. App. 3d 332.

Defendant Boodell responds that no hearing is necessary before he is dismissed from the suit. The first reason is that plaintiff's complaint alleges an arbitration agreement appointing defendant Boodell as an arbitrator and these allegations must be taken as true. Defendant contends that on a motion to dismiss, the facts alleged in the complaint are taken as true. (*Cipolla v. Bloom Township High School* (1979), 69 Ill. App. 3d 434, 437.) This is equally the case on an appeal from a successful motion to dismiss. (*Lakeview Medical Center v. Richardson* (1979), 76 Ill. App. 3d 953, 954; *Sturm v. Block* (1979), 72 Ill. App. 3d 306, 307.) Defendant refers to *Circle Security Agency, Inc. v. Ross* (1981), 99 Ill. App. 3d 1111, to focus the appeal only on questions of law raised by the allegations of the complaint. Citing no cases, he argues that plaintiff's pleadings (wherein he is referred to as an arbitrator) should be treated as judicial admissions.

Secondly, he contends that the first appeal of this action was premised on the fact that the agreement was an arbitration agreement and appointed him as arbitrator. Defendant complains that plaintiff, having prosecuted a lengthy appeal based entirely on the nature of the agreement in question as an arbitration agreement cannot now argue that the parties merely entered into "some form of binding contractual dispute resolution."

Finally, Boodell argues that the arbitration agreement speaks for itself, and declares that Boodell is an arbitrator and the agreement is an arbitration agreement which, therefore, shields him with immunity. He cites cases from other jurisdictions for various definitions of arbitration and arbitrator. Arbitration is an "approach to the resolution of a dispute, by calling upon a third party to impose a solution to that which was not susceptible to mutual concordance." (*Association of Pennsylvania State College & University Faculties v. Commonwealth* (1981), 496 Pa. 315, 319, 436 A.2d 1386, 1388.) An arbitrator is merely "one who resolves a dispute between others." (*Craviolini v. Scholer & Fuller Associated Architects* (1960), 89 Ariz. 24, 27, 357 P.2d 611, 613.) Defendant cites our appellate court as noting that the agreement in this case gave the defendant " 'sole authority to resolve any conflict existing between the Parties and to compromise any disputes concerning equity interests.' " (*Grane v. Grane* (1985), 130 Ill. App. 3d 332, 334.) The defendant notes that it is unnecessary for an arbitration agreement to use the word "arbitration" to define with precision the role of an arbitrator, or to provide the precise manner in which the arbitration would proceed when a State statute establishes that proce-

dure. *Joseph F. Trionfo & Sons, Inc. v. Ernest B. LaRosa & Sons, Inc.* (1978), 38 Md. App. 598, 604-05, 381 A.2d 727, 731-32; *Bertram Garden Apartments, Inc. v. De Martini* (1951), 108 N.Y.S.2d 483, 484-85; see 5 Am Jur. 2d *Arbitration and Award* (sec. 12 (1962); 6 C.J.S. *Arbitration* sec. 14 (1975).

■ In view of our opinion in the first appeal, defendant's position is not well taken. His argument overlooks plaintiff's contention of fraud in the inducement of the agreement, and our court's decision that a cause of action was adequately pleaded when we remanded the case for a hearing on that question. In the first appeal, the only issue was whether the plaintiff was entitled to a section 102(b) hearing, and, if so, would fraud in the inducement make the agreement voidable. It is undisputed that an arbitrator's immunity and authority derives from a valid arbitration agreement. (*Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 1050 (arbitrator's authority is determined by arbitration agreement which serves to define and circumscribe his authority); accord, *Local Union 134, International Brotherhood of Electrical Workers, AFL-CIO v. Chicago Transit Authority* (1979), 68 Ill. App. 3d 855, 860.) But, it is also clear that throughout this litigation plaintiff has attacked the validity of the arbitration agreement. His amended count VIII, his motion to stay the arbitration proceedings and his request for a hearing all support this. To refer to it as an arbitration agreement does not imbue it with validity and enforceability. Absent a valid and enforceable arbitration agreement, an arbitrator has no authority or power to resolve any dispute. (*Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 1050.) The record reflects that to date no section 102(b) hearing has been held by the court. There is no dispute that the agreement, as signed, was meant to be an arbitration agreement. But, the plaintiff has consistently maintained that the agreement itself was induced by fraud on the part of Boodell, and our court in the first opinion determined that if the trial court finds fraud in the inducement then the agreement itself is voidable at the plaintiff's option. *Grane v. Grane* (1985), 130 Ill. App. 3d 332, 343.

■ The only issue remaining is, if the agreement is found to be invalid, whether the arbitrator is cloaked with immunity for his acts in fraudulently inducing the agreement. We must first look at the nature of fraud in the inducement. To constitute fraud sufficient to invalidate a contract, a representation must be one of material fact made for the purpose of inducing the other party to act, must be known to be false by the maker, but reasonably believed to be true by the other party, and must be relied upon to the other party's detriment. (*Grane v. Grane* (1985), 130 Ill. App. 3d 332, 343.) Fraud in the inducement viti-

ates the contract and renders the agreement voidable at the option of the injured party. (*Bresler Ice Cream Co. v. Millionnaires Club, Inc.* (1966), 71 Ill. App. 2d 342, 343; *Grane v. Grane* (1985), 130 Ill. App. 3d 332, 343.) The principle of holding a party liable in damages for fraudulently inducing contracts is an ancient and well-settled one. (*Siltz v. Springer* (1908), 236 Ill. 276, 277-78 (one induced to contract though fraud may, at his election, rescind the contract, or affirm it and recover damages); see *Wilbur v. Potpora* (1984), 123 Ill. App. 3d 166, 171; *In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 570.) Plaintiff clearly pleaded for rescission of the arbitration agreement, and, in the alternative, for damages against Boodell. Thus, Boodell, if he induced a fraudulent contract, could be liable in damage unless there was immunity pursuant to law.

Defendant argues that there are few cases which contemplates an arbitrator's immunity and none in Illinois. He argues that an arbitrator should have the same immunity as a judge for acts committed while performing official duties. Plaintiff also argues from the traditional position that an arbitrator is deemed to have the equivalent of judicial immunity. (See, *e.g., Cahn v. International Union Ladies' Garment Union* (3d Cir. 1962), 311 F.2d 113, 114-15.) Plaintiff quotes the *dicta* in *Bradley v. Fisher* (1872), 80 U.S. 335, 351-52, 20 L. Ed. 646, 651, the leading case on judicial immunity, where the Supreme Court stated:

> "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. *A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.* \*\*\* Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority." (Emphasis added.) *Bradley v. Fisher* (1872), 80 U.S. 335, 351-52, 20 L. Ed. 646, 651.

The plaintiff refers the court to a Sixth Circuit decision wherein the court found a county judge liable and subject to damages for al-

leged acts outside the scope of his jurisdictional powers. (*Lynch v. Johnson* (6th Cir. 1970), 420 F.2d 818, 820.) Analogizing judicial immunity and arbitral immunity, plaintiff points to case law outside of Illinois where arbitrators have been held liable for damages for acts committed outside the scope of their authority. (See *Lundgren v. Freeman* (9th Cir. 1962), 307 F.2d 104, 118 (where the trial court found that architects, acting as quasi-arbitrators, were not immune from plaintiff's claim that they wilfully and maliciously interfered with plaintiff's performance of certain contracts entered into with a codefendant school district); *Craviolini v. Scholer & Fuller Associated Architects* (1960), 89 Ariz. 24, 357 P.2d 611 (where the court found no immunity for defendant architect where he was not performing the peculiar and limited functions of arbitrating disputes between various contractors).) Plaintiff contends that absent an arbitration agreement, an individual's inducing another to sign an arbitration agreement is beyond the scope of an arbitrator's "particular and limited" function.

Here, defendant played the role of agent/legal representative on behalf of Hubert Grane, Sr., and certain corporate defendants. His alleged fraudulent act of inducing plaintiff and codefendant, Fred C. Grane, to enter into a binding contractual-dispute-resolution agreement cannot be deemed to fall within the scope of a neutral arbitrator's role.

It is well established that "an arbitrator is immune from suit for all acts which he performs in his capacity as an arbitrator." (*Tamari v. Conrad* (7th Cir. 1977), 552 F.2d 778, 780, quoting *Cahn v. International Ladies' Garment Union* (3d Cir. 1962), 311 F.2d 113, 114-15; *Corey v. New York Stock Exchange* (W.D. Mich. 1980), 493 F. Supp. 51, aff'd (6th Cir. 1982), 691 F.2d 1205; *Babylon Milk & Cream Co. v. Horvitz* (1956), 151 N.Y.S.2d 221, aff'd (1957), 4 A.D. 777, 165 N.Y.S.2d 717.) An arbitrator is "not liable for negligence, fraud, or misconduct, even where it is sufficient to invalidate the award." (5 Am. Jur. 2d *Arbitration and Award*, sec. 107 (1962), and cases cited therein; see also *Corey v. New York Stock Exchange* (W.D. Mich. 1980), 493 F. Supp. 51, 55-56, aff'd (6th Cir. 1982), 691 F.2d 1205 (arbitrator immune from a wide variety of claims including fraud and misconduct); *Babylon Milk & Cream Co. v. Horvitz* (1956), 151 N.Y.S.2d 221, aff'd (1957), 4 A.D. 777, 165 N.Y.S.2d 717 (dismissing fraud claim against arbitrator); *Rubinstein v. Otterbourg* (1973), 78 Misc. 2d 376, 357 N.Y.S.2d 62 (dismissing claim for misconduct).) Defendant claims that since amended count VIII alleges misconduct on his part in connection with the arbitration, specifically fraud in obtaining his appointment as arbitrator, defendant is immune from such action. He notes that plain-

tiff does not dispute these statements of the law, but misconstrues the scope of an arbitrator's immunity. (*Tamari v. Conrad* (7th Cir. 1977), 552 F.2d 778; *Raitport v. Provident National Bank* (E.D. Pa. 1978), 451 F. Supp. 522 (an arbitrator is immune not only to claims arising out the performance of his duties as an arbitrator, but also to challenges to his authority or jurisdiction to arbitrate at all).) In *Tamari*, the plaintiff sought to enjoin an arbitration and for a declaration that an arbitration panel was illegally constituted. Noting that the plaintiff was "questioning defendants' authority to make any ruling in this case," the court held that "arbitral immunity should be extended to cases where the authority of an arbitrator to resolve a dispute is challenged." (*Tamari v. Conrad* (7th Cir. 1977), 552 F.2d 778, 780.) The court based its decision on the voluntary nature of arbitration stating that "individuals *** cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit." (552 F.2d 778, 781.) Defendant contends that this rationale plainly applies to *all* challenges to an arbitrator's authority to act. Immunity of arbitrators should be expanded, he contends, because the policy of this State favors arbitration. *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600, IFT, AFT, AFL-CIO* (1981), 102 Ill. App. 3d 681; compare *International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. Greyhound Lines, Inc.* (6th Cir. 1983), 701 F.2d 1181, 1186 (given national policy favoring labor arbitration, arbitrators' immunity "ought not only be affirmed, but, if need be, expanded" quoting *Hill v. Aro Corp.* (N.D. Ohio 1967), 263 F. Supp. 324, 326).

Neither plaintiff nor defendant dispute the existing law that arbitrators are granted immunity which shields them from personal liability when they are functioning as arbitrators. The dispute concerns the extent of that immunity.

This case is unique because the arbitrator himself is alleged to have actively persuaded a party to participate in the arbitration. The bulk of the cases reflect a judiciary which seeks to protect arbitrators who have been chosen pursuant to a preexisting contract. (See, *e.g., Tamari v. Conrad* (7th Cir. 1977), 552 F.2d 778 (arbitrators chosen by Board of Trade); *Raitport v. Provident National Bank* (E.D. Pa. 1978), 451 F. Supp. 522 (court empanelled attorneys); *International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. Greyhound Lines, Inc.* (6th Cir. 1983), 701 F.2d 1181 (arbitrator chosen pursuant to Pension Trust Agreement); *Hill v. Aro Corp.* (N.D. Ohio 1967), 263 F. Supp. 324 (arbitrator chosen from

among candidates listed pursuant to employment agreement).) An arbitrator is usually one who has no interest in the outcome of the matters under his or her consideration. (*I. & F. Corp. v. International Association of Heat & Frost Insulators & Asbestos Workers, Local No. 8* (S.D. Ohio 1980), 493 F. Supp. 147, 149.) Boodell had represented various companies of Hubert Grane, Jr., Hubert Grane, Sr., and the corporate defendants prior to seeking to have himself appointed arbitrator, and, he clearly had an interest in the matters under his consideration.

The scope of an arbitrator's immunity is not unlimited. Like a judge, he is immune only while acting within his jurisdiction. (*Bradley v. Fisher* (1872), 80 U.S. 335, 351-52, 20 L. Ed. 646, 650-51; *Coleson v. Spomer* (1975), 31 Ill. App. 3d 563 (judge only immune from liability for damages for acts committed within the judge's judicial jurisdiction).) Acts committed by one seeking to arbitrate a dispute prior to the execution of a valid arbitration agreement should be scrutinized carefully. The court upheld arbitral immunity in *Tamari v. Conrad* (7th Cir. 1977), 552 F.2d 778, where the arbitrator was an individual selected by the Board of Trade to resolve disputes between brokers and their customers. The court specifically found that the arbitrators had no interest in the outcome of the dispute, that the posture of the case was analogous to a dissatisfied litigant attempting to sue a member of the jury, and that the litigant could obtain the relief he sought by challenging the composition of the arbitration panel on appellate review. (552 F.2d 778, 781.) Here, defendant had an interest in the outcome of the dispute and, if defendant is immunized for his fraudulent conduct, plaintiff will not find relief for his damages suffered because of his reliance on defendant's misrepresentations. In *Raitport v. Provident National Bank* (E.D. Pa. 1978), 451 F. Supp. 522, the court granted immunity to a panel of three arbitrators where they arbitrated a dispute where the amount in controversy exceeded $10,000, thus acting beyond their jurisdiction. The court held that these arbitrators, empaneled by the court, could not be held personally liable. They were not responsible for their own appointment—they merely served the court as volunteers—and the plaintiff could still pursue his real adversary. Further, the court was specifically determining the immunity of arbitrators under sections 1983 and 1985 of the Civil Rights Act (42 U.S.C. secs. 1983, 1985 (1970).) In *International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. Greyhound Lines, Inc.* (6th Cir. 1983), 701 F.2d 1181, the court upheld arbitral immunity where the arbitrator was found to have no interest in the outcome of the employees' benefit plan. The court utilized a "functional comparison" analysis whereby it decided if the complained of act

was "functionally comparable" to that of a judge. (701 F.2d 1181, 1186.) In the instant case the court, utilizing the "functional comparison" analysis, would be required to ask if inducing a party to participate in dispute resolution is "functionally comparable" to an act of a judge. Judges do not induce parties to litigate or arbitrate. In *Hill v. Aro Corp.* (N.D. Ohio 1967), 263 F. Supp. 324, the court granted the arbitrator immunity where he was alleged to have acted inconsistently with his duties when he dismissed a discharged employee's grievance. The court found that the arbitrator was selected by the company and union from a list of nine candidates submitted by the Federal Mediation and Conciliation Service. In none of the foregoing cases were there allegations of fraud in the inducement by the arbitrator prior to the election, selection, appointment, or consent of the arbitrator by all interested parties.

We find *Craviolini v. Scholer & Fuller Associated Architects* (1960), 89 Ariz. 24, 357 P.2d 611, and *Lundgren v. Freeman* (9th Cir. 1962), 307 F.2d 104, are relevant. They hold that the scope of immunity for arbitrators is limited. In *Craviolini*, the court noted that only when one is performing those "particular and limited functions" of an arbitrator does immunity attach. (*Craviolini v. Scholer & Fuller Associated Architects* (1960), 89 Ariz. 24, 357 P.2d 611, 614.) In *Lundgren*, the court restricted the scope of immunity for arbitrator/architects where the defendant acted wilfully and intentionally. *Lundgren v. Freeman* (9th Cir. 1962), 307 F.2d 104, 118-19.

■ Determining that arbitrators do not have immunity prior to the valid execution of an arbitration agreement will not undercut the strong State policy favoring arbitration. As part of the reasoning to extend immunity to arbitrators is to encourage their voluntary participation in dispute resolution without being caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit (*Tamari v. Conrad* (7th Cir. 1977), 552 F.2d 778, 781), we note this holding will not affect those who resolve disputes within the limits of their jurisdictional limits. We hold that a person who fraudulently induces another to enter into an arbitration agreement is not immune for the damages caused by his fraudulent acts. We express no opinion on the merits, but conclude only that a cause of action lies.

The order of the trial court dismissing Boodell should be reversed and the cause remanded for further proceedings.

Reversed and remanded.

REINHARD and HOPF, JJ., concur.