Forest G. NICCUM, et al., Plaintiffs,

v.

J. Robert MEYER, et al., Defendants.

J. Robert MEYER, Counterplaintiff,

v.

Forest G. NICCUM, individually, Doris L. Niccum, individually, and Marvel Engineering Company, a Delaware corporation, Counterdefendants.

No. 89 C 7715.
Adv. No. 93 A 00798.

United States District Court,
N.D. Illinois,
Eastern Division.

July 25, 1994.

Robert F. Coleman, Kenneth Philip Ross, Jerry Scott Menge, Eugene J. Schiltz, Robert F. Coleman & Associates, Eugene I. Pavalon, Pavalon & Gifford, Chicago, IL, for plaintiffs.

Robert Isidore Berger, Jeffrey Peter DeJong, Jeffrey T. Kraus, Altheimer & Gray, Chicago, IL, for defendants.

Christopher C. Kendall, Coffield, Ungaretti and Harris, Chicago, IL, for Seyfarth, Shaw, Fairweather & Geraldson.

Joseph Michael Williams, Law Office of Joseph M. Williams, St. Charles, IL, for Dianne L. Meyer.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

### I. INTRODUCTION

This complex and complicated litigation is before the court on the motions of plaintiffs for summary judgment and to dismiss the remaining counts (I and V) of the First Amended Counterclaim. Plaintiffs are suing their former lawyer for fraudulently obtaining their property and money while he was providing legal services. They move for judgment and claim liability based on principles of attorney fiduciary obligations which give rise to a presumption of fraud when an attorney acquires the property or money of a client during the course of an attorney-client relationship. They also move to dismiss a counterclaim on grounds that defendant Meyer has not alleged facts showing that he has suffered or will suffer any loss in connection with a default on a lease and on a guaranty he has given.

The plaintiffs are Forest G. Niccum and Doris L. Niccum ("the Niccums"), husband and wife, residents of Santurce, Puerto Rico, and entities owned or controlled by them, Marvel Contaminant Control Industries, Inc. ("Marvel Contaminant") and Marvel Engineering Company ("Marvel Engineering"), Delaware corporations. The defendants are J. Robert Meyer, individually, and as trustee of MEC Trust No. 1 ("Meyer"), Marvel Industries, Inc., a Nevada Corporation, MEC Enterprises, Inc., a Nevada Corporation, Haras Surena, Inc. a Puerto Rican corporation, Genesee Partners, Ltd., a Nevada corporation, and American National Bank, as Trustee of Trust No. 66193.

Jurisdiction was alleged under RICO, 18 U.S.C. § 1961 *et seq.* Diversity jurisdiction is not alleged and apparently does not exist. Plaintiffs are residents of Puerto Rico and one of the defendants is a Puerto Rican corporation. However, the court also has jurisdiction over an adversary complaint filed by the Niccums in a bankruptcy proceeding in which Meyer is the debtor. 28 U.S.C. § 1334(b).

From 1971 to May 1983, Meyer was an associate and partner in the firm of McBride, Baker & Coles. From June 1, 1983 to late 1987, Meyer was a partner in the firm of Seyfarth, Shaw, Fairweather & Geraldson. From 1973 to November of 1987, Meyer provided general legal services to the Niccums and their corporations.

For at least two and one-half years after suit was filed in this court, discovery proceeded along with an arbitration proceeding between plaintiffs and Meyer's former partners in the practice of law, *In re Arbitration Proceedings Between Forest G. Niccum, et al. v. Seyfarth, Shaw, Fairweather & Geraldson, et al.*, heard by retired Judge Frank J. McGarr. The Niccums and Meyer gave depositions in this proceeding and testified in the arbitration proceedings. Before a decision was rendered in the arbitration proceedings, the Niccums settled their claims against the Seyfarth firm for $12 million and reserved their claims against Meyer and the defendants in this case (all of whom are in default other than Meyer). Plaintiffs concede that, as a result of the settlement in the arbitration proceedings, Meyer may be able to claim an offset or credit against any judgment against him in this case.

On April 9, 1992, Meyer filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona. The proceedings were transferred to this

court on September 9, 1992 and converted to Chapter 7 on December 21, 1992, *In re John Robert Meyer, Debtor,* No. 92 B 21019. The Niccums and the companies they control filed an adversary complaint in the Meyer bankruptcy case, 93 A 798, which essentially duplicated the factual allegations of their complaint in this court. Accordingly, on July 8, 1993, in order to avoid further duplication of proceedings, this court withdrew the adversary complaint pursuant to 28 U.S.C. § 157(d), consolidated the proceedings, closed discovery, and ordered the presentation of a final pretrial order. In lieu of a final pretrial order, plaintiffs were permitted to file the pending motions.

## II. SUMMARY JUDGMENT

Plaintiffs seek to resolve their claims relating to their sales to Meyer of Marvel Engineering, the property at 2085 Hawthorne Avenue, Melrose Park, Illinois ("Hawthorne property"), the proceeds of certain payments, and negligence in the assemblage of property in Elburn, Illinois. The purchase transactions are said to be voidable on the basis of standards applicable to transactions between attorneys and their clients. The payment transactions are said to be unlawful diversions of proceeds of checks drawn to the order of Marvel Contaminant and diverted by Meyer.

The Niccum Trust owns 49% of the stock of plaintiff Marvel Contaminant, which in turn owns a number of subsidiary corporations and other business entities. Forest and Doris Niccum own the remaining stock of Marvel Contaminant.

The Elburn transaction is said to have resulted in damages because of attorney negligence or malpractice.

Plaintiffs also seek a ruling that any judgment entered is nondischargeable under the Bankruptcy Code, 11 U.S.C. § 523.

Plaintiff's motion for summary judgment is supported by a statement of undisputed facts as required by Local Rule 12(m). The statement is also supported by deposition testimony in this case and testimony and exhibits introduced in the arbitration proceedings.

■ As an initial matter, Meyer objects to consideration of the motion for summary judgment because he was not allowed to conduct discovery on the adversary complaint. However, the adversary complaint filed in the Bankruptcy proceedings contains the same factual allegations which were before this court in the pending case from October of 1989 until July of 1993 when an order was entered for the filing of a final pretrial order. There was ample opportunity for Meyer to conduct discovery without granting additional discovery before considering the present motions.

Defendant Meyer appears in this case *pro se.* He has filed a brief in response to the motion for summary judgment together with a statement of facts and an affidavit. His response, however, is not in compliance with Local Rule 12(n). Meyer's general denial does not specifically respond, paragraph by paragraph, to the Rule 12(m) statement of plaintiffs or call attention to specific evidence that would be admissible to controvert the specific facts upon which plaintiffs rely.

■ On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.,* 844 F.2d 470, 471 (7th Cir.1988). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Id.* at 473. The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Id.* at 324, 106 S.Ct. at 2553. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Covalt v. Carey Canada, Inc.,* 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476–77 (7th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102

L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 [106 S.Ct. 2548, 2553, 91 L.Ed.2d 265] (1986); *id.* at 325 ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324 [106 S.Ct. at 2553]. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 [106 S.Ct. 1348, 1356, 89 L.Ed.2d 538] (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 [106 S.Ct. 2505, 2512, 91 L.Ed.2d 202] (1986).

*Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).

■ Local Rule 12 specifies in detail how a motion for summary judgment must be supported and the response that must be made. The Seventh Circuit has upheld the requirement of the rule that there be "specific references to affidavits, parts of the record, and other supporting materials relied upon." Material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted in the manner required by the rule. *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 518–19 (7th Cir.1992); *Maksym v. Loesch,* 937 F.2d 1237, 1240–41 (7th Cir.1991); *Appley v. West,* 929 F.2d 1176, 1180 (7th Cir.1991); *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1103 (7th Cir.1990).

Meyer does not dispute that he engaged in a series of transactions with the plaintiffs, including his purchase of Marvel Engineering and the Hawthorne property while he was their attorney, nor does he dispute that certain checks made payable to Marvel Contaminant were deposited by him in the bank account of Marvel Engineering when it was owned and controlled by him.

On December 30, 1985, Meyer, as president of MEC Enterprises, Inc., executed an agreement for the purchase of the issued and outstanding stock of Marvel Engineering from Forest Niccum for $1,000,000 payable over a ten year period. Meyer is a trustee of, and a beneficiary of, a life income interest in MEC Trust No. 1, which holds title to the stock of MEC Enterprises, Inc. Meyer's wife is a contingent life beneficiary and their children are remainder beneficiaries. MEC Enterprises, Inc. also guaranteed debts of Marvel Engineering Company.

Plaintiffs point to the testimony of appraisers in the arbitration proceeding who estimated the value of Marvel Engineering to have been $12,143,073 at the time of the sale and the value of the consideration paid to be $4,505,290. Meyer has pointed to no evidence which would be admissible to counter the contention that there was a large price disparity favoring Meyer.

Forest Niccum was not represented by any other attorney in connection with the sale.

Prior to the sale of the company to Meyer, Marvel Engineering leased from Hawthorne Enterprises, Inc., a subsidiary of Marvel

Contaminant Control Industries, Inc., the manufacturing facility located at 2085 Hawthorne Avenue Melrose Park, Illinois. On December 6, 1985, upon the advice of Meyer acting as attorney for the Niccums and Marvel Contaminant, Forest Niccum, as President of Marvel Contaminant, executed a trust deed prepared by Meyer, which conveyed legal title to the 2085 Hawthorne property to Land Trust No. 66193 at American National Bank. Meyer obtained the power of direction over the land trust and inserted the name of Marvel Industries in the land trust agreement as the party holding the beneficial interest under the Trust.

Sometime in January 1986, Meyer, on behalf of Hawthorne Enterprises, Inc., executed a deed conveying the Hawthorne property from Hawthorn Enterprises to its parent corporation, Marvel Contaminant, which effectively conveyed the title to the land trust over which Meyer had a power of direction. On December 31, 1985, Meyer, on behalf of Marvel Industries, a company he controlled, mortgaged the Hawthorne property to American National Bank to collateralize a $2.5 million industrial revenue bond.

Meyer contends that the purchase price of the Hawthorn property to Marvel Industries was to be $2.1 million. No written contract was prepared for sale of the property. The Niccums were not independently represented in that transaction.

During 1986, certain payments were made to Marvel Containment in the form of checks payable to Marvel Containment which Meyer endorsed and deposited in the bank account of Marvel Engineering Company. They are as follows:

1. May 7, 1986 Lyphomed check in the amount of $111,733.

2. May 30, 1986 Seyfarth check in the amount of $45,262.38.

3. June 17, 1986 Chicago Title & Trust Co. check in the amount of $32,194.66.

Meyer provides no explanation for the fact that these payments to Marvel Containment were diverted by him to the account of Marvel Engineering.

Plaintiffs point to other payments they claim were diverted by Meyer, but on summary judgment the showing made is not clear enough to warrant relief. Similarly, the showing made with respect to the Elburn transaction is not sufficient to warrant a summary judgment finding of negligence.

■ Transactions between an attorney and client are subject to a presumption of undue influence which imposes a burden on the attorney to show them to be fair and equitable. The Illinois Supreme Court has stated:

Transactions between attorneys and clients are closely scrutinized. When an attorney engages in a transaction with a client and is benefited thereby, a presumption arises that the transaction proceeded from undue influence. (*McFail v. Braden* (1960), 19 Ill.2d 108, 166 N.E.2d 46) Once a presumption is raised, the burden shifts to the attorney to come forward with evidence that the transaction was fair, equitable and just and that the benefit did not proceed from undue influence. (*Franciscan Sisters Health Care Corp. v. Dean*, (1983), 95 Ill.2d 452, 69 Ill.Dec. 960, 448 N.E.2d 872) Because a strong presumption of undue influence arises when an attorney engages in a transaction with a client and is benefited thereby (*McFail v. Braden* (1960), 19 Ill.2d 108, 166 N.E.2d 46), courts require clear and convincing evidence to rebut this presumption (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill.2d 452, 69 Ill.Dec. 960, 448 N.E.2d 872). Some of the factors which this court deems persuasive in determining whether the presumption of undue influence has been overcome include a showing by the attorney (1) that he or she made a full and frank disclosure of all relevant information; (2) that adequate consideration was given; and (3) that the client had independent advice before completing the transaction. (*McFail v. Braden* (1960), 19 Ill.2d 108, 118, 166 N.E.2d 46)

*Klaskin v. Klepak*, 126 Ill.2d 376, 128 Ill.Dec. 526, 530, 534 N.E.2d 971, 975 (1989).

■ Each of the transactions as to which summary judgment is being granted was an attorney-client transaction raising the presumption of undue influence. Defendant has

not pointed to any evidence of a full and frank disclosure as to any of the transactions, nor adequate consideration, nor independent advice. Meyer fails to provide any evidence that any other attorney ever advised the Niccums with respect to the transactions. Also, there is apparently no evidence to dispute plaintiffs' claims that the consideration paid for the property sold to Meyer was inadequate. No admissible evidence is presented to explain how moneys of Marvel Containment were lawfully deposited in the account of Marvel Engineering Company. Accordingly, plaintiffs are entitled to a partial judgment of liability on the claims described.

■ In claims of this kind a client has either of two remedies. The client may elect to rescind the transaction or sue for damages for the difference between the value received and the value that would have been received but for the attorney's misconduct. *See Beaton & Associates v. Joslyn Mfg. & Supply,* 159 Ill.App.3d 834, 111 Ill.Dec. 649, 655, 512 N.E.2d 1286, 1292 (1st Dist.1987); *Callner v. Greenberg,* 376 Ill. 212, 33 N.E.2d 437, 439 (1941); *Grane v. Grane,* 143 Ill.App.3d 979, 98 Ill.Dec. 91, 95, 493 N.E.2d 1112, 1116 (2d Dist.1986); *Wilbur v. Potpora,* 123 Ill.App.3d 166, 78 Ill.Dec. 615, 619, 462 N.E.2d 734, 738 (1st Dist.1984); *In re Estate of Neprozatis,* 62 Ill.App.3d 563, 19 Ill.Dec. 470, 476, 378 N.E.2d 1345, 1351 (1st Dist.1978).

■ Exactly what relief should be allowed and in what amount are matters that can not be readily resolved on summary judgment. Also, it may be that Meyer is entitled to an offset or credit for sums already recovered in settlement of the arbitration proceedings. These questions will be referred to the Bankruptcy Court for resolution together with the question of whether any judgment not paid out of the debtor's estate is nondischargeable under the Bankruptcy Code, 11 U.S.C. § 523.

### III. THE MOTION TO DISMISS

■ Remaining before the court are Counts I and V of defendant's counterclaim, which is treated as also applicable to the adversary complaint. In each of these counts defendant sues the Niccums and the related corporations based on possible liability he may incur as a result of a corporate default of lease payments by and a default on the Industrial Revenue Bond financed by American National Bank. Meyer is a guarantor of the Bond. However, plaintiffs represent that American National, the holder and lender, has assigned the IRB, including Meyer's individual guaranty, to Forest and Doris Niccum. The Niccums further assert, in support of dismissal of the claims, that they have not and do not intend to make any claims against Meyer on the guaranty, or as a result of the default in lease payments. This representation in support of a court order of dismissal is sufficient to protect Meyer against any such future claim, and he has alleged no past injury. Accordingly, the motion to dismiss Counts I and V of the counterclaim will be granted.

### IV. RICO CLAIMS

In the course of studying the record in this case it has become apparent that the claims of the plaintiffs do not meet the standards for a claim under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*

■ Courts examine at least four factors relevant to RICO's pattern requirement: (1) the presence of separate schemes; (2) the number of victims; (3) the number and variety of predicate acts and the length of time over which they were committed; and (4) the occurrence of distinct injuries. *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 780 (7th Cir.1994); *Talbot v. Robert Matthews Distr. Co.,* 961 F.2d 654, 662–63 (7th Cir.1992); *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986).

■ What is here presented is a single attorney relationship with clients. A pattern of separate criminally fraudulent predicate acts is totally missing from the interconnected transactions described by the parties. At most, there was but one scheme to defraud which ended with the termination of the relationship. There is no claim that defendant engaged in any other schemes to defraud. Breach of attorney fiduciary obligations or conversion of a client's property during the

course of a professional engagement does not ordinarily rise to the level of a RICO claim.

 However, it is not necessary to rule on this matter at this time because the bankruptcy stay applies to this claim and because the parties have not been given the opportunity to brief the sufficiency of the RICO claims. In the meantime, the adversary complaint is being returned to the Bankruptcy Court for further proceedings consistent with the rulings of this court.

IT IS THEREFORE ORDERED AS FOLLOWS:

(1) Plaintiffs' motion for summary judgment [189–1] is granted in part and denied in part. It is granted only as follows:

(a) Defendant John Robert Meyer is liable to plaintiffs with respect to the sale of their interests in Marvel Engineering Company.

(b) Defendant John Robert Meyer is liable to plaintiffs with respect to the sale of the property at 2085 Hawthorne Avenue, Melrose Park, Illinois.

(c) Defendant John Robert Meyer is liable to plaintiffs with respect to the proceeds of checks payable to Marvel Containment Control Industries, Inc. in the amount of $189,-190.

(2) Plaintiffs' motion to dismiss Counts I and V of defendants' counterclaim [185–1] is granted and said counts are hereby dismissed.

(3) This case is remanded to the United States Bankruptcy Court for the Northern District of Illinois for further proceedings consistent with the opinion and orders of this court entered today.

(4) Plaintiffs may move to reinstate their complaint on notice and motion, if any proper basis exists for reinstatement after the adversary complaint is resolved and the bankruptcy stay is lifted.

(5) Adversary complaint No. 93 A 00798 is remanded to the United States Bankruptcy Court for the Northern District of Illinois for disposition in case No. 92 B 21019 in accordance with the opinion and orders of this court.